**Charles STURGEON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9612–CR–823.

Court of Appeals of Indiana.

July 16, 1997.

Transfer Denied Sept. 16, 1997.

 

John G. Forbes, Indianapolis, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General of Indiana, Christopher L. Lafuse Deputy Attorney General Indianapolis, for Appellee–Plaintiff.

---

1. Our review of this matter has been greatly assisted by the thorough and concise nature of

## OPINION

KIRSCH, Judge.

In this interlocutory appeal, Charles D. Sturgeon seeks a determination of whether his right to a speedy trial has been violated. The trial court determined it has not, and we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 8, 1995, James Coffman's body was discovered in the trunk of Coffman's car. He had suffered multiple stab wounds. On March 13, 1995, Sturgeon and Leslie Hauk were charged with Coffman's murder, and a warrant was issued for their arrest. On March 14, 1995, Sturgeon was arrested, made an initial appearance, pled not guilty to the crime, and was incarcerated.

The events subsequent to Sturgeon's arrest and incarceration are set forth in the trial court's findings [1] as follows:

"6. On March 24, 1995, Ms. Carol Kohlmann, Forensic Scientist of the Marion County Crime Laboratory, received the initial request for serology of various items of property whereupon blood was found. The request was submitted by Detective Jesse Beavers, Indianapolis Police Department, after consultation with [the deputy prosecutor].

7. On March 27, 1995, Ms. Kohlmann clarified which samples were to be analyzed by teleconference with Detective Beavers and [the deputy prosecutor].

8. On April 24, 1995, Detective Beavers notified Ms. Kohlmann that the Defendant Sturgeon's standard (a sample of his blood) had been obtained and received by the Indianapolis Police Department.

9. On May 9, 1995, the State of Indiana moved for continuance of the initial trial setting of May 22, 1995.

10. In moving for continuance of the trial setting (May 22, 1995), the State of Indiana reported to the Court that this

the trial court's findings and conclusions.

case should be delayed due to the State's need to perform various laboratory tests on blood samples taken at the scene of the crime and obtain expert reports concerning those samples.

11. From the outset of the case, the defense has maintained steadfastly that the laboratory testing of the blood samples would be exculpatory as to Defendant, Charles D. Sturgeon, and has continuously requested the results of said testing.

12. On May 30, 1995, Ms. Kohlmann picked up the Defendant Sturgeon's standard from the Indianapolis Police Department Property Room. Ms. Kohlmann's responsibility was to analyze the fluid sample provided by Defendant Sturgeon and to transfer the sample to the next level for processing.

13. On July 19, 1995, the State of Indiana and Defendant Sturgeon agreed to a continuance of the trial setting of August 14, 1995. The reason for the continuance being the unavailability of blood test results from the Marion County Crime Laboratory.

14. On July 20, 1995, the Court set the case for trial by jury to commence on October 10, 1995.

15. On August 31, 1995, Ms. Kohlmann initiated the laboratory workup on the case.

16. In September, 1995, Ms. Kohlmann completed the initial laboratory workup on the case.

17. On September 26, 1995, the State of Indiana requested a continuance of the trial setting of October 10, 1995. The reason for the continuance being the unavailability of blood test results from the Marion County Crime Laboratory. The tests are necessary to the presentation of evidence in determining the presence and identity of blood and that the case cannot proceed without these results.

18. On September 28, 1995, the Court set the case for trial by jury to commence on December 4, 1995.

19. On November 21, 1995, the State of Indiana and Defendant Sturgeon agreed to a continuance of trial by jury scheduled for December 4, 1995. The reason for the

continuance being the unavailability of blood test results from the Marion County Crime Laboratory. The tests are necessary to the presentation of evidence in determining the presence and identity of blood and that the case cannot proceed without these results.

20. On November 23, 1995, the Court set the case for trial by jury to commence on March 4, 1996.

21. In December, 1995, Ms. Kohlmann prepared the samples for transfer to Dr. Mohamid Tahir, Marion County Crime Laboratory, who would complete the requested DNA testing.

22. On January 31, 1996, Ms. Kohlmann's report on the body fluid analysis comparison of crime scene samples with the blood type standards from Defendants Sturgeon and Hauk, was completed and issued.

23. The delay between the September, 1995 workup and the January 31, 1996 analytical report was due to Ms. Kohlmann's uncertainty as to what samples should be sent to the DNA lab.

24. Ms. Kohlmann advises that it is essential to the analysis to know which blood samples are significant and, therefore, need to be tested for DNA.

25. The delay between the initial assignment of the case to Ms. Kohlmann and the processing of the samples was attributable in part to a backlog of cases at the Marion County Crime Laboratory and, in part, to communication problems between Ms. Kohlmann and [the deputy prosecutor].

26. On January 31, 1996, Ms. Kohlmann prepared a request to Dr. Tahir for the completion of a DNA analysis.

27. On February 27, 1996, Defendant Sturgeon moves to continue the trial set for March 4, 1996. The reason for the continuance being the unavailability of blood test results from the Marion County Crime Laboratory. The tests are necessary to the presentation of evidence in determining the presence and identity of blood and that the case cannot proceed without these results. The case was then

set for trial by jury to commence on May 13, 1996.

28. On April 16, 1996, at a pre-trial conference, [a different deputy prosecutor] repeated that the blood testing reports were still not available.

29. On April 16, 1996, the case was officially assigned to Dr. Tahir for the completion of the DNA testing.

30. On April 23, 1996, Dr. Tahir received the items for DNA analysis and undertook the preliminary testing.

31. On May 9, 1996, Dr. Tahir issued his preliminary report of the DNA analysis. The preliminary DNA report was tendered to Mr. Forbes, counsel for Defendant Sturgeon. In consideration of the state of the discovery of blood evidence, the Court vacated the trial by jury setting of May 13, 1996.

32. On May 21, 1996, the Court set the case for trial by jury to commence on September 30, 1996.

33. Diligent inquiry on the part of [the original deputy prosecutor] would have informed her as to the status of the testing and would have given her the necessary information to request the required DNA testing on an earlier date."

*Record* at 403–07. Based upon these findings, the trial court entered conclusions in which it reviewed the time period between March 14, 1995, the date Sturgeon was arrested, and September 30, 1996, the last scheduled trial date. Of the 566 days comprising that time period, the trial court allocated 223 days of delay to Sturgeon and 343 days to the State. The 223 days allocated to Sturgeon represented the time periods during which the trial was continued with his agreement. Because the days allocated to the State amounted to less than one year, the trial court denied Sturgeon's motion for discharge filed on speedy trial grounds. The trial court certified the matter for interlocutory appeal, and this court accepted jurisdiction pursuant to Ind.Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

The Sixth Amendment to the United States Constitution guarantees every accused person the right to a speedy trial. Article I, § 12 of the Indiana Constitution provides that justice shall be administered "speedily and without delay." Although these constitutional provisions guarantee a speedy trial, they do not guarantee a trial within a particular time. Indiana, therefore, adopted Indiana Criminal Rule 4 to establish "a reasonable period in which an accused must be brought to trial." *State v. Moles,* 166 Ind. App. 632, 646, 337 N.E.2d 543, 552 (1975).

### I. Criminal Rule 4(C)

Sturgeon first contends that the delay in obtaining the blood testing results violated his speedy trial right under Criminal Rule 4(C). Criminal Rule 4(C) provides:

"**(C) Defendant Discharged.** No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar...."

Sturgeon argues that for purposes of determining whether a Criminal Rule 4(C) violation occurred, the State should be charged with the entire delay in obtaining the blood testing results, including the time incurred as a result of continuances to which he agreed. The basis for Sturgeon's argument is that the State was negligent in requesting and obtaining the blood testing results which Sturgeon believed would exculpate him from participation in Coffman's murder. Sturgeon acknowledges that he agreed to the continuances, but contends that he was coerced into doing so because the State had exclusive control over the blood samples and over requesting and obtaining the appropriate testing. Accordingly, argues Sturgeon, the delay should not be attributed to him.

The trial court held the State accountable for its negligence in obtaining the blood testing by allocating to it all of the time after April 23, 1996. The court concluded that "[t]he reason this period is chargeable to the

State is that on April 23, 1996, the Court determined that the delay in obtaining the DNA testing evidence was the result of the State's negligence in not previously ensuring that actual DNA testing had been commenced." *Record* at 408. Sturgeon argues that the State's negligence caused the entire delay following his incarceration on March 14, 1995 and that the State should be charged with such time period rather than only the portion after April 23, 1996.

■ In analyzing Sturgeon's claim, it must be remembered that:

> "CR. 4(C) is not an absolute rule, but is subject to limitations and exceptions, such as the exception to discharge when periods of delay are caused by defendant's acts or when a continuance is had on defendant's motion. These exceptions are recognitions of the fact that the deliberate speed of justice cannot be absolute. A defendant may desire a continuance, or may cause delay, or may acquiese [sic] in delay, and thereby effectively waive and extend the one-year reasonable time for trial. In such cases, swift and deliberate justice is defined, not by the Rule, but by the demands of the individual defendant."

*Moles,* 166 Ind.App. at 647, 337 N.E.2d at 552. Thus, the general rule is that "when a defendant has either agreed to a State sought continuance or by his actions has acquiesced to a continuance then the delay is chargeable to the defendant." *State ex rel. O'Donnell v. Cass Superior Court,* 468 N.E.2d 209, 210 (Ind.1984).

■ We reject Sturgeon's attempt to carve out an exception to this general rule for situations in which the State's negligence necessitated the continuance. "A defendant is under no obligation to agree to any State sought continuance. He has the right to refuse to agree and to force the State to either bring him to trial within the time limits or seek a continuance for which it alone is responsible." *Id.* at 211. "It does not matter that the defendant's act was justifiable or meritorious, since it is not the motive behind defendant's actions, but the effect of his actions, that determines whether the delay is chargeable to him." *Moles,* 166 Ind.App. at 647, 337 N.E.2d at 553. Stur-

geon may very well have been justified in agreeing to the continuances in hopes of obtaining exculpatory evidence. His actions, however, had the effect of postponing his trial. Thus, the continuances to which Sturgeon agreed prior to April 23, 1996, are all chargeable to him, and the one-year time period was extended accordingly. There was no violation of Sturgeon's rights under Criminal Rule 4(C).

## II. Constitutional Guarantees

Sturgeon also argues that his constitutional right to a speedy trial under both the state and federal constitutions was violated by the delay in obtaining the blood testing. Although Sturgeon in his brief combines the constitutional claim with the Criminal Rule 4 claim, the rights guaranteed by the constitution are distinct but related to the rights protected by Criminal Rule 4. *Moles,* 166 Ind.App. at 646, 337 N.E.2d at 552. The two claims raise different issues and thus are analyzed separately. *Eguia v. State,* 468 N.E.2d 559, 568 n. 2 (Ind.Ct.App.1984).

■ In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court articulated a balancing test to be used when evaluating a speedy trial claim under the United States Constitution. Indiana has employed the same balancing test to evaluate speedy trial claims pursued under our state constitution. *Crawford v. State,* 669 N.E.2d 141, 145 (Ind.1996); *Fortson v. State,* 269 Ind. 161, 379 N.E.2d 147 (1978). The balancing involves an evaluation of both the State's and the defendant's conduct, taking into consideration such factors as: the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *Harrell v. State,* 614 N.E.2d 959, 963 (Ind.Ct.App.1993), *trans. denied.*

### A. Length of Delay

■ The Supreme Court identified this factor as "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go

into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The amount of time constituting a presumptively prejudicial delay depends upon the peculiar circumstances of the case. *Id.* at 530–31, 92 S.Ct. at 2192.

■ The delay in the present case spanned the eighteen months between March 14, 1995 and September 30, 1996. Although the State contends that this delay is not presumptively prejudicial, this court has held that an eighteen-month delay between appellate reversal of a conviction and retrial of the charge was sufficient to trigger inquiry into the *Barker* balancing test. *Lahr v. State,* 615 N.E.2d 150, 152 (Ind.Ct.App.1993). This court reached such a holding without "concern[ing] ourselves with the particular circumstances" of the case. *Id.* Following such precedent, we hold here that the eighteen-month delay following Sturgeon's arrest to obtain testing results is presumptively prejudicial.

### B. Reason for Delay

The State does not dispute either the trial court's finding or Sturgeon's assertion that the delay was the result of the State's negligence in obtaining the appropriate testing of the blood evidence. The State's conduct with respect to the blood testing is, quite honestly, incomprehensible to this court. Despite numerous status conferences and needless monitoring by the trial court, the prosecution continually failed to follow through with the request to obtain the appropriate testing from the crime laboratory. A review of the Record, however, supports the trial court's finding that such inattention was the result of negligence, and was not deliberate. While such negligence is considered in the balance, it is weighted less heavily than a deliberate attempt to delay the trial. *Id.* at 153; *Harrell,* 614 N.E.2d at 964. *See also Scott v. State,* 461 N.E.2d 141, 143 (Ind.Ct.App.1984) (State's negligence in proceeding with the prosecution is a factor that must be considered along with the prejudice to the defendant).

### C. Assertion of Speedy Trial Right

The Record reflects that the first mention of a speedy trial issue occurred at a pre-trial conference on May 21, 1996, when the trial court expressed its concern "with respect to Rule 4 issues[.]" *Record* at 129. In response, defense counsel proclaimed that he too was "terribly concerned about the Rule 4 issue[,]" *Record* at 129–30, but admitted that he had not "researched the Rule 4 issue as it would relate to these unique circumstances." *Record* at 130–31. Sturgeon then moved for discharge on October 30, 1996.

It is clear that speedy trial issues did not enter the Record until fourteen months after Sturgeon's arrest and incarceration, and, even then, only at the instigation of the trial court. Although Sturgeon was entitled to move for discharge at the expiration of the one-year period, he did nothing until four months following the trial court's articulation of the issue. Furthermore, Sturgeon did not object on speedy trial grounds to the setting of any trial date.

### D. Prejudice

■ Finally, we must consider any prejudice the delay may have caused Sturgeon. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

*Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. The burden is on the defendant to show he was actually prejudiced by the delay. *Terry v. State,* 400 N.E.2d 1158, 1161 (Ind.Ct.App. 1980). The potential for prejudice is lessened when the delay occurs after, rather than before, arrest. When, as here, the delay follows arrest, "the defendant is aware he must face a charge of committing a crime on

a particular date and, therefore, has the opportunity to avoid the particular prejudice of memory fade or loss by making notes, identifying witnesses and memorializing their recollection, etc." *Scott,* 461 N.E.2d at 144.

The prejudice Sturgeon asserts is the "protracted period of time" for which he has been incarcerated. *Appellant's Brief* at 36. He does not allege the death, disappearance, or memory loss of any witnesses. He does not claim that any physical evidence has been lost or destroyed. While we recognize the considerable length of Sturgeon's incarceration, we also recognize that the "most serious" component of the prejudice factor—impairment to Sturgeon's defense—is absent.

Placing the foregoing factors in balance, we hold that Sturgeon's constitutional right to a speedy trial has not been violated. He has been subjected to a lengthy delay resulting from the State's negligence in obtaining blood testing. Such delay, however, has occurred with Sturgeon's agreement. Sturgeon did not assert his speedy trial right until the issue was raised by the trial court fourteen months following Sturgeon's arrest and incarceration. Finally, and most importantly, Sturgeon has not carried his burden of establishing that he was actually prejudiced by the delay.

Affirmed.

SULLIVAN and CHEZEM, JJ., concur.