Randy K. HILLENBURG,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A04–0108–CR–358.

Court of Appeals of Indiana.

Oct. 25, 2002.

Frederick A. Turner, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Randy K. Hillenburg appeals his conviction of two counts of Child Molesting,[1] both class A felonies, as well as the sentences imposed for those convictions. Hillenburg presents the following restated issues for review:

1. Did the trial court err in denying Hillenburg's motion to dismiss and motion in limine concerning the breadth of the charging information?

2. Was Hillenburg's right to a speedy trial violated?

3. Did the trial court err in refusing Hillenburg's request to strike the jury panel and to declare a mistrial?

4. Was Hillenburg denied the right to counsel when he was not informed that the jury had passed a note to the trial court?

5. Did the trial court err in sentencing Hillenburg?

We affirm.

The facts favorable to the convictions are that Hillenburg was married to Dana Lawyer, and the couple had two children. One of the children, A.H., was mildly mentally handicapped. The couple divorced in 1991. Sometime in 1998, Hillenburg was granted physical custody of his children. A.H., eleven years old at the time, and her brother stayed overnight at Lawyer's house on Friday night, September 17, 1999. The next day, A.H. was playing with her sixteen-year-old cousin, Heather. A.H. told Heather that her father, Hillenburg, had molested her. Heather went into the house and relayed to Lawyer what A.H. had told her. Lawyer confirmed this with A.H. and then took A.H. to the hospital for examination. A.H. informed Eva Martin, a nurse at the hospital, that the last molestation had occurred on Thursday night, September 16, 1999. On that occasion, Hillenburg had engaged in vaginal intercourse with A.H. and placed his penis in her mouth. It was also learned that A.H. had not bathed since those incidents and was wearing the same underwear.

Nurse Martin retrieved samples as evidence for a rape kit. The results of an examination with a Woods Lamp[2] revealed the presence of either semen or saliva in A.H.'s right armpit, toward the inside of her right buttock, the backs of her thighs, the upper area of her inner thighs, and streaks down her thighs. Following that examination, Dr. Lillette Wood performed a physical examination of A.H., which revealed that her external genitalia was

---

1. Ind.Code Ann. § 35–42–4–3 (West, PREMISE through 2002 1st Special Sess.).

2. Nurse Martin explained a Woods Lamp as follows:

 A Woods Lamp is a blue light, its [sic] like an ultraviolet light, its [sic] hand held, we turn out all the light [sic] in the room and we turn the light on, and we shine this light

 on the body and the only things that fluoresce under the Woods Lamp would be semen or saliva. And so from the Woods Lamp I would just like shine it over her body, and any part that glowed green, I'd go ahead and take a swab and take a sample.

 *The Transcript* at 454–55.

slightly red, and there was a creamy discharge around the urethra and vaginal opening. Dr. Wood also observed that A.H.'s hymen appeared to be red and "slightly gaping" for an eleven-year-old girl. *The Transcript* at 467. Dr. Wood testified that the condition of A.H.'s hymen was consistent with penetration over an extended period of time. Hillenburg was charged and convicted as set out above following a jury trial.

1.

Hillenburg contends that the trial court erred in denying his motion to dismiss and motion in limine with respect to the breadth of the charging information.

Prior to trial, Hillenburg filed a motion to dismiss, arguing that the charging information alleged two counts of child molesting, but alleged in the factual basis for the charging information that the offenses were committed over a period of eighteen months. Moreover, he alleged, the charging information did not identify a specific instance of molesting. The trial court denied the motion. On the morning of trial, Hillenburg filed a motion in limine, seeking to prevent the State from introducing evidence of more than one incident of sexual intercourse under Count I and more than one incident of criminal deviate conduct under Count II. This request was based on the contention that although the timeframe alleged in each count was January 1998 to September 16, 1999, each alleged only one incident. The trial court denied the motion.

Ind.Code Ann. § 35–34–1–2(a)(5) (West 1998) provides that a charging information must "[state] the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense[.]" Our supreme court recently addressed the requirements of that provision in a case similar to the instant case. In *Love v. State,* 761 N.E.2d 806 (Ind.2002), the charging information contained three separate counts that identified the dates of the respective child molestation offenses as occurring during time periods ranging from one to four months. Each count alleged one instance of child molesting by sexual intercourse, but the State presented evidence that the defendant molested the victim continually from April 1997 to April 1999. Upon appeal, the defendant argued that the charging information filed by the State alleged facts that were different from the evidence actually presented to the jury. In rejecting that argument, the supreme court discussed I.C. § 35–34–1–2(a)(5). That discussion, reproduced below, is relevant to the instant issue:

> Indiana Code § 35–34–1–2(a)(5) requires that an information "[state] the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." The State must also "[state] the time of the offense as definitely as can be done if time is of the essence of the offense." *Id.* § 35–34–1–2(a)(6)[.] Where time is not of the essence of the offense, however, it is well established that "the State is not confined to proving the commission on the date alleged in the affidavit or indictment, but may prove the commission at any time within the statutory period of limitations." *See Herman v. State,* 247 Ind. 7, 17, 210 N.E.2d 249, 255 (1965) ("[W]here time is not of the essence of the offense, under an allegation of a specific date, the offense may ordinarily be proved as having occurred at any date preceding the filing of the affidavit or indictment which is within the statute of limitations."); *Quillen v. State,* 271 Ind. 251, 252, 391 N.E.2d 817, 818 (1979) (citing *Stallings v. State,* 232 Ind. 646, 114 N.E.2d 771 (1953)).

*Love v. State*, 761 N.E.2d at 809. The court went on to hold that time was not of the essence in cases involving child molesting, reasoning that the exact date of the offense "becomes important only in circumstances where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.*

We are aware that the issue in *Love* was not precisely the same as the issue here. *Love* is instructive on the instant issue, however, because it provides authority for the principle that time is not of the essence in an information alleging child molesting unless the age of the victim serves to elevate the charged offense. This principle was also exemplified in *Buzzard v. State*, 712 N.E.2d 547 (Ind.Ct.App.1999), *trans. denied.* There, as here, the defendant was alleged to have committed multiple acts of child molesting, and the charging information alleged that they occurred over a period of approximately eighteen months. The defendant claimed that a lack of specificity in the charging information with respect to the time of the molestations hindered the presentation of his defense. This court reiterated that "the time of the offense is not of the essence in cases involving allegations of child molesting", *id.* at 551, and that "the exact date of the offense becomes important only in circumstances where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.*

■ In the instant case, the charging information alleged that Hillenburg committed two acts of child molesting sometime between January 1998 and September 1999. Because the charged offenses were child molesting, and because the classification of offenses was not in question, the exact date of the offenses was not important. Under these circumstances,

the trial court did not err in denying Hillenburg's motion to dismiss. *See id.*

In a related argument, Hillenburg complains that the trial court erred in denying his motion in limine, by which he sought to exclude evidence of more than one act of molestation. In *Love v. State*, 761 N.E.2d 806, the defendant was charged in three counts with molesting his victim, each count alleging molestations during a different time period. The State presented evidence of multiple molestations during the specified times. Although the precise issue before us here was not specifically presented in *Love*, the following supreme court discussion concerning a closely related question is instructive:

As Defendant states in his brief, the evidence showed, "(1) there were a series of [molestations] that began during time [the victim and her mother] lived at 33rd and Meridian; (2) they began living there in April, 1997; and (3) the incidents ended in 1999." It is clear from the information that Defendant was being charged with three acts of molestation. Furthermore, the information would be sufficient even if it were restricted to the time periods it listed; the State presented evidence of multiple acts of molestation that occurred between August, 1998, and April, 1999. Therefore, there was evidence of molestation during each time period indicated in the charging information.

*Id.* at 809 (citation omitted).

■ In the instant case, Hillenburg was charged with two acts of molestation that occurred sometime between January 1998 and September 16, 1999. The State presented evidence that Hillenburg committed multiple acts of both intercourse and criminal deviate conduct upon A.H. during the specified time period. As indicated in *Love*, the trial court did not err in allowing the State to present evidence of more than

one of the serial incidents of molestation committed during that time by Hillenburg.

### 2.

Hillenburg contends that he was denied his right to a speedy trial.

Criminal Rule 4(C) provides,

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar[.]

Pursuant to this rule, the State is obligated to bring a criminal charge to trial within one year. The rule provides, however, that the State is not charged with delays attributable to the defendant. As we will detail more fully below, Hillenburg submitted seven separate motions for continuance, all of which were granted. Hillenburg contends that those delays should not be chargeable to him. According to Hillenburg, the requests for continuance were necessitated by various actions on the part of the State, including most notably delays in the attaining and processing of tissue samples.

After considering Hillenburg's claims, and in view of the facts before us, we find that *Sturgeon v. State*, 683 N.E.2d 612 (Ind.Ct.App.1997), *trans. denied* is applicable here. In *Sturgeon*, the defendant claimed that his case should have been dismissed pursuant to Crim. R. 4(C) because the delays that prevented the State from bringing the case to trial within one year were attributable to the State's negligence in prosecuting the case. The *Stur-*

*geon* defendant requested a continuance because the State delayed in, among other things, obtaining blood test results. The court quoted the following language from *State v. Moles*, 166 Ind.App. 632, 337 N.E.2d 543, 552 (1975):

C.R. 4(C) is not an absolute rule, but is subject to limitations and exceptions, such as the exception to discharge when periods of delay are caused by defendant's acts or when a continuance is had on defendant's motion. These exceptions are recognitions of the fact that the deliberate speed of justice cannot be absolute. A defendant may desire a continuance, or may cause delay, or may acquiesce [sic] in delay, and thereby effectively waive and extend the one-year reasonable time for trial. In such cases, swift and deliberate justice is defined, not by the Rule, but by the demands of the individual defendant.

*Sturgeon v. State*, 683 N.E.2d at 616. The court went on to hold that a continuance is chargeable to the defendant even where the defendant's acquiescence in a continuance is justifiable or meritorious. This, because "it is not the motive behind the defendant's actions, but the effect of his actions, that determines whether the delay is attributable to him." *Id.* The "effect" to which the court alluded was "postponing [the] trial." *Id.*

The holding in *Sturgeon*, to the effect that a delay attributable ultimately to the State's negligence in prosecuting the case can be chargeable to the defendant if the defendant acquiesces, finds an even more compelling application in the instant case. In *Sturgeon*, the defendant merely acquiesced in the State's requests for continuance. Here, Hillenburg affirmatively sought them on his own initiative. With these principles in mind, we now consider the facts pertinent to this issue.

The charges in question were filed against Hillenburg on September 23, 1999. Therefore, Crim. R. 4(C) required that the State should bring the matter to trial by February 23, 2000. The first setting for Hillenburg's trial was February 22, 2000. On September 15, Hillenburg sought a continuance on the ground that he had not yet received the results of hair, blood, and saliva tests to which he had submitted two months earlier and that he needed extra time to prepare. The trial court granted the motion and trial was reset for June 27, 2000. Because the continuance was granted at Hillenburg's request,. the resulting 128–day delay was chargeable to Hillenburg. *Sturgeon v. State*, 683 N.E.2d 612. On June 5, 2000, Hillenburg sought a second continuance on the ground that the State had submitted additional evidence for testing, the results of which were not then known. The motion was granted and the trial was reset for August 22, 2000. The resulting 56–day delay was chargeable to Hillenburg. *Id.* On June 19, 2000, Hillenburg again requested a continuance on the ground that he still had not received the results of the aforementioned tests. The request was granted and trial was reset for October 3, 2000. The resulting 42–day delay was chargeable to Hillenburg. *Id.* On September 14, 2000, Hillenburg submitted his fourth request for continuance, this time on the ground that he had just received the results of the DNA tests and needed time to modify his defense accordingly. He requested a continuance of at least 90 days, a delay that the State opposed as excessive. Nevertheless, the trial court granted the request and reset trial for December 12, 2000. The resulting 70–day delay was chargeable to Hillenburg. *Id.* On November 6, 2000, Hillenburg submitted his fifth request for continuance, this time on the ground that his defense counsel had a scheduling conflict, he was unable to find a DNA expert witness, and the State had not provided him with witnesses' addresses and phone numbers. The trial court granted the motion and reset trial for January 23, 2001. The 42–day delay was chargeable to Hillenburg. *Id.* At a December 11 hearing, Hillenburg requested his sixth continuance, this time on the ground that he had a scheduling conflict. The motion was granted and trial was reset for February 6, 2001. That 14–day delay was chargeable to Hillenburg. *Id.* On January 19, 2001, Hillenburg filed his seventh motion for continuance, citing a scheduling conflict on the part of his expert witness. The motion was granted and trial was reset for March 19. The resulting 41–day delay was chargeable to Hillenburg. *Id.* Finally, on March 15, 2001, the trial court on its own motion reset trial for May 15 because of an error in the jury pool. That delay was not chargeable to Hillenburg.

In summary, the delays chargeable to Hillenburg totaled 393 days. This means that, pursuant to Crim. R. 4(C), the State had until October 21, 2001 to bring Hillenburg to trial. Inasmuch as trial was held on May 18 and 19 of 2001, he was not denied his right to a speedy trial and the trial court did not err in denying his motion to dismiss on that basis.

3.

Hillenburg contends that the trial court erred in refusing his request to strike the jury panel and to declare a mistrial. The request to strike the jury panel was in response to the following statement by the court during *voir dire:*

> What is a reasonable doubt? In words we say reasonable doubt is such a doubt in an important matter in your life as would cause you to pause and reflect about what decision ought to be made. And the way I try to illustrate reasonable doubt is to ask you to accept that for those of us who have children, chil-

dren occupy a part of our life that is more important than any other and we care about their welfare and well being and so let me ask you to imagine that you have a child who become [sic] ill, and you can see that the child is in distress and so you take the child to your family physician, a person that you've dealt with for many, many years and even count a personal friend, that' [sic] the kind of relationship you have. And this doctor examines your child, causes certain tests to be run on your child, reviews your child's medical history, questions you about symptoms that are occurring and gathers as much information as he or she can about your child's current situation. After the test results are in and after the doctor has reviewed all the information, he or she sits down with you and begins to discuss findings, what the believe [sic] the situation is with your child. And your [sic] allowed to ask all the questions you want to ask about that. And at some point in time the discussion has been as complete as it possibly can be, all of your questions have been asked and answered and the Doctor [sic] says, at that point in time, I believe it is necessary to remove your child's right leg above the knee, otherwise he is grave [sic] danger of dying. And I think we ought to schedule that for tomorrow morning. You're then allowed to discuss that recommendation and to go over all the information again. And at the point in time when all of your questions have been answered as best they can be, if you say to the doctor, yes, go a head [sic] and schedule the operation, I suggest that you are confident of the doctor's advice to a point that has removed all reasonable doubt from your mind. If on the other hand, after reflecting you say to the doctor, I believe I need to have a second opinion or I'd like to sleep on it and let you know in the morning, then I suggest that you have you [sic] not reached that level of confidence in the doctor's advice that has removed all reasonable doubt from your mind. Based upon that illustration, to [sic] you believe that you have a grasp of what it means to prove a fact beyond a reasonable doubt? If say [sic] I do or nod or something.

*The Transcript* at 74–75. After making a few additional comments, the court excused the jury for a break. At that point, defense counsel asked that the court excuse the jury pool because it had been tainted by the·above-quoted comments regarding reasonable doubt. Counsel argued that any attempt by the trial court to define "reasonable doubt" was erroneous, and that the error was even more prejudicial to Hillenburg because the court had referred to children in its example.

We note first that Hillenburg frames this issue as a challenge to the denial of the motion to dismiss the jury pool and as a challenge to the failure to declare a mistrial. This court has held that dismissal of the jury panel is the only appropriate remedy for challenges such as Hillenburg brings here. As stated in *Roller v. State,* 602 N.E.2d 165, 168 n. 2 (Ind.Ct.App.1992), *trans. denied,* "as voir dire is not part of the trial, the proper motion would have been one to strike or discharge the jury panel[.]" Therefore, we will consider only the claim that the trial court erred in failing to grant Hillenburg's request to dismiss the jury panel.

■ The trial court "has broad discretionary power to regulate the form and substance of voir dire." *Wentz v. State,* 766 N.E.2d 351, 357 (Ind.2002) (quoting *Williams v. State,* 555 N.E.2d 133, 137 (Ind.1990)). On the other hand, the trial court has a concurrent duty to "refrain from making unnecessary comments or remarks." *Wentz v. State,* 766 N.E.2d at 357

(quoting *Williams v. State,* 555 N.E.2d at 137).

At trial and upon appeal, Hillenburg focuses his argument on this issue upon the fact that the example used by the trial court in discussing reasonable doubt mentioned a child. In fact, Hillenburg's argument upon appeal challenges the court's statement exclusively upon that basis. Nevertheless, we take this opportunity to address the statement in Hillenburg's brief that our supreme court would prefer that trial courts should refrain from undertaking to explain the concept of reasonable doubt. In *Winegeart v. State,* 665 N.E.2d 893 (Ind.1996), the court undertook a thorough analysis of the question of whether—and how—a jury should be instructed on the definition of "reasonable doubt" in a criminal trial. To summarize, the court expressed a preference, but did not require, that Indiana trial courts instruct juries on the concept by utilizing an instruction proposed by the Federal Judicial Center, i.e., Pattern Criminal Jury Instruction 21. In the course of its discussion, the supreme court briefly discussed a type of instruction of which the one under consideration here is an example. The court referred to it as a "hesitate to act" instruction. Such an instruction "equate[s] 'beyond a reasonable doubt' with the degree of probability a juror would require to act unhesitatingly 'in a matter of highest concern and importance to' himself or herself." *Winegeart v. State,* 665 N.E.2d at 901. Regarding such instructions, the court concluded, "use of this analogy is neither required nor particularly desirable in explaining the concept of reasonable doubt." *Id.* at 902. The court also concluded that "hesitate to act" instructions, although not favored, are not forbidden. We must now determine whether the court erred in giving this particular instruction.

Hillenburg claims that the use of a child in the court's "hesitate to act" analogy prejudiced him because the alleged victim in this case was a child. Although the analogy and the alleged facts of the offense bore that particular similarity, that is all that the two had in common. We presume that the trial court used a child in its analogy to highlight the considerable burden of proof facing the State in obtaining a conviction. It is generally true in our society that the level of protective caution and care that a person accords his or her child surpasses that accorded to practically anyone or anything else. Therefore, major medical decisions made on behalf of the child require a degree of certainty that has few if any parallels in a parent's life. The trial court evoked that example to stress the high level of certainty the law requires in a juror's mind in order to cast a "guilty" vote. The hypothetical child in the court's instruction was not cast as the victim of a crime, nor was the child's credibility even remotely an issue in the analogy; therefore, the analogy did not serve to bolster the credibility of children in general. Viewed in this light, we fail to see how the analogy prejudiced Hillenburg. Because Hillenburg has failed to demonstrate the requisite prejudice, we conclude that the trial court did not err in refusing to discharge the jury panel. *See Timberlake v. State,* 690 N.E.2d 243 (Ind.1997), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999).

4.

Hillenburg contends that he was denied the right to counsel when he was not informed that the jury had passed the following note to the trial court:

IN State's Evidence # 7

Re: Item 1F1b underwear. If this sample contains a mixture of fluid that

does not exclude the presence of DNA from Randy Hillenburg, why does the last column indicate only xx chromosomes and not a mix of xx and xy chromosomes? What is AM? (amylase)

*Appellant's Appendix* at 148. The trial court sent a response back with the bailiff to the effect that the question could not be answered.

■■■ Ind.Code Ann. § 34–36–1–6 provides:

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Hillenburg contends that the jury's note reflected a disagreement among the jurors, thus triggering the provisions of I.C. § 34–36–1–6. We hold that I.C. § 34–36–1–6 does not apply here. Addressing the substantially similar predecessor statute to I.C. § 34–36–1–6,[3] our supreme court held in *Bouye v. State,* 699 N.E.2d 620 (Ind. 1998) that the provision applies only in cases where the jury *explicitly* indicates there has been a disagreement. Although the contents of the note permit an inference of disagreement, such is not the only inference that may be drawn; the note certainly does not *explicitly* manifest a disagreement. Therefore, the provisions of I.C. § 34–36–1–6 are not triggered. Finally, we note that "[w]hen a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless." *Pendergrass v. State,* 702 N.E.2d 716, 720 (Ind.

1998). There are no grounds for reversal here.

### 5.

Hillenburg contends that the trial court erred in two respects in sentencing him. First, he contends that the trial court improperly identified and weighed the aggravating and mitigating circumstances. Second, he contends that the sentence is manifestly unreasonable.

■■■ Generally, sentencing matters are within the trial court's discretion and are governed by Ind.Code Ann. § 35–38–1–7.1. *Bonds v. State,* 729 N.E.2d 1002 (Ind.2000). We review such decisions only for an abuse of discretion, including decisions to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and decisions to run the sentences concurrently or consecutively. *Id.* When enhancing or reducing the presumptive sentence, or when imposing consecutive sentences, the court must identify all significant mitigating and aggravating circumstances, state the specific reason why each circumstance is determined to be mitigating or aggravating, and articulate its evaluation and balancing of the circumstances. *Crawford v. State,* 770 N.E.2d 775 (Ind.2002).

In this case, the trial court imposed enhanced sentences of forty-five years for each of the felony convictions and ordered that they be served consecutive to one another. In support of these enhanced and consecutive sentences, the court identified the following aggravating factors: (1) A period of lengthy incarceration was necessary to protect the children of the community; (2) Hillenburg occupied a position of trust with the victim; and (3) the victim was mildly mentally handicapped. The court found the following mitigating

**3.** *See* Ind.Code Ann. § 34–1–21–6 (repealed 1998).

circumstances: (1) Hillenburg had no history of criminal or juvenile delinquent behavior; and (2) Hillenburg had been employed for a considerable length of time.

 Hillenburg first contends that the trial court found an improper aggravating factor. He contends that the court improperly found sentence enhancement to be appropriate because Hillenburg posed a threat to society. He claims that because he committed the offenses at home upon his own child, there is no indication that he poses a threat to other children either outside his home, or not his own. This argument is without merit. The fact that the victim in this case was his daughter, rather than an unrelated child, does not necessarily exclude all unrelated children as potential victims. We do not deem unreasonable the trial court's view that a sexual offender who preys on his own child poses a threat to all children, especially in view of the ongoing nature of the molestations of A.H. The trial court did not err in finding as an aggravating factor the fact that Hillenburg posed a danger to society's children.

 Hillenburg contends that the trial court failed to find mitigating circumstances supported by the record. He notes correctly that the failure to find a mitigating circumstance that is clearly supported by the record "gives rise to the belief that the court was not cognizant of it and therefore failed to consider it." *Appellant's Brief* at 27 (quoting *Barany v. State*, 658 N.E.2d 60, 67 (Ind.1995)).

Determining mitigating circumstances is within the discretion of the trial court. A trial court need not regard or weigh a possible mitigating circumstance the same as urged by the defendant. When a defendant alleges that the trial court failed to identify or find a mitigating circumstance, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. The trial court is not required to make an affirmative finding expressly negating each potentially mitigating circumstance.

*Corbett v. State*, 764 N.E.2d 622, 630–31 (Ind.2002) (citations omitted).

Hillenburg contends the trial court erred in failing to identify as mitigators the following three circumstances: (1) The crime was committed under circumstances that made it unlikely to recur; (2) incarceration would impose a hardship upon Hillenburg's elderly mother; and (3) "there was evidence that he was a good father and took good care of the children, despite the sexual transgressions." *Appellant's Brief* at 28.

 The first mitigator proffered by Hillenburg was not so undeniably creditworthy that the court was required to identify it as a mitigator. Our review does not reveal significant evidence to support this proffered mitigator; thus it was not clearly supported by the record and the trial court did not err in declining to accept Hillenburg' argument in that regard. *Corbett v. State*, 764 N.E.2d 622. With respect to the second proffered mitigator, there was evidence that Hillenburg's incarceration would be a hardship on his mother. We note first that this would be true regardless of the length of the sentence, as Hillenburg conceded at sentencing. Thus, even the presumptive sentence would have caused his mother hardship for a considerable period of time. Moreover, there was no showing with respect to his mother's degree of reliance on him. Viewed as a whole, the evidence supporting this proffered mitigator was not of such a character that the trial court erred in failing to cite it as a mitigating factor. Finally, we summarily reject Hillenburg's contention that

the court erred in failing to find as a mitigator that he was a good parent.

Hillenburg contends that his sentence is manifestly unreasonable. Our supreme court recently set forth the following analysis for determining whether a sentence was manifestly unreasonable:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article 7, § 4 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." *Id.* "In determining whether a sentence is manifestly unreasonable, 'the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so.'" *Evans v. State,* 725 N.E.2d 850, 851 (Ind.2000)[.]

> We have also observed that "the maximum possible sentences are generally most appropriate for the worst offenders." *Evans,* 725 N.E.2d at 851. This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

*Buchanan v. State,* 767 N.E.2d 967, 972–73 (Ind.2002) (some citations omitted).

Buchanan received more than the presumptive, but less than the maximum, sentence for each of the two convictions, with the sentences to run consecutive to one another. Hillenburg committed the offenses on his young daughter. The offenses, which were ongoing in nature, included vaginal and anal intercourse, and oral copulation. In subjecting his daughter to such abuse, Hillenburg violated a position of trust with the victim. This violation was even more serious in view of the fact that his daughter suffered from mental disability. Although Hillenburg had no history of criminal behavior, has been gainfully employed, and provides some level of support for his mother, we cannot say that the sentence imposed was manifestly unreasonable, given the nature of the offense and the character of the offender. The trial court did not err in imposing consecutive forty-five-year sentences.

Judgment affirmed.

NAJAM, J., and SHARPNACK, J., concur.