

FILED

Aug 18 2017, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Marietto V. Massillamany<br>Massillamany & Jeter LLP<br>Fishers, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Lyubov Gore<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodriques Lamar Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 18, 2017<br><br>Court of Appeals Case No.<br>48A02-1611-CR-2580<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Thomas Newman Jr., Judge<br><br>Trial Court Cause No.<br>48C03-1205-FD-946 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Rodriques Johnson was convicted of arson, a Class B felony, and sentenced to ten years in the Indiana Department of Correction. Johnson appeals his conviction, raising one issue for our review: whether his constitutional right to a speedy trial was violated. Concluding his right to a speedy trial was not violated, we affirm.

# Facts and Procedural History

[2] Johnson lived with his mother in a house belonging to the Anderson Housing Authority until they moved out sometime in April or early May of 2012. On May 21, 2012, Johnson threw a brick through the kitchen window of the house. He then lit pieces of paper on fire and threw them through the window.

[3] Two Anderson Housing Authority employees, Nathan Ballinger and Willie Beasley, were inside the house at the time. Johnson told them to "get the f*** out." Transcript, Volume I at 235. William Hofer, another Anderson Housing Authority employee, tried to enter the house to extinguish the fire, but Johnson blocked him. Johnson then sat in a nearby lot until the police and fire departments arrived a short time later. Ballinger, Beasley, and Hofer provided statements to the officers and Johnson was arrested at the scene. The Anderson Housing Authority spent $5,300.41 repairing the house.

[4]     On May 22, 2012, Johnson was charged with arson, a Class D felony, and criminal mischief, a Class A misdemeanor.[1] A jury trial was initially scheduled for September 18, 2012, but was delayed numerous times. The trial date was first moved to February 26, 2013, because of court congestion. Johnson then requested a competency evaluation and the trial court set a competency hearing for May 6, 2013. At the hearing, Johnson was deemed competent to stand trial. Meanwhile, the trial date was moved to June 26, 2013, because of court congestion. The trial date was later moved to September 17, 2013, also because of court congestion.

[5]     A month before his September 2013 trial date, Johnson filed a motion for continuance, which the trial court granted, and the trial was rescheduled for December 10, 2013. Then, a month before his December 2013 trial date, Johnson filed another motion for continuance, which the trial court granted, pushing the trial date to February 18, 2014. Johnson's counsel then withdrew from Johnson's case and Johnson was appointed new counsel sometime after the second motion for continuance. Court congestion caused another delay and the trial date was moved to June 3, 2014. One month before that trial date, Johnson filed a motion to vacate the trial date and set the case for a dispositional hearing. The trial court scheduled a dispositional hearing for June

---

[1] The State later filed an amended information charging Johnson with arson as a Class B felony, and dismissed the criminal mischief charge during the trial.

16, 2014, but the parties failed to reach a plea agreement and a new trial date was set for September 23, 2014.

[6] Less than one month before the September trial date, Johnson filed a motion for another competency evaluation. The State objected, Johnson responded, and the trial court took the matter under advisement. Johnson then filed a motion to be allowed to present the defense of mental disease or defect. Following a hearing, the trial court granted Johnson's competency evaluation request and appointed doctors to evaluate Johnson. After a competency hearing on July 22, 2015, Johnson was deemed competent to stand trial and a trial date was scheduled for December 1, 2015. The trial was later rescheduled to December 14, 2015, but the record is unclear as to why it was changed.

[7] On December 14, 2015, Johnson's counsel requested to withdraw from the case. The trial court granted the request and appointed Johnson new counsel. On May 2, 2016, the trial court set a new trial date for September 27, 2016. Four days before the trial date, Johnson filed a motion for a third competency evaluation, as well as another motion for continuance. The State objected to both motions and the trial court denied both motions. At trial, Johnson orally requested the trial court reconsider the competency determination and made another motion for continuance. The trial court denied the requests.

[8] The jury found Johnson guilty of arson and the trial court sentenced Johnson to ten years in the Indiana Department of Correction. This appeal followed.

# Discussion and Decision

## I. Standard of Review

"The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution guarantee the right to a speedy trial." *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. The standard of review for a speedy trial issue, which is a pure question of law, is de novo. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012).

## II. Johnson's Speedy Trial Rights

Johnson claims the 1,579 day delay between his arrest and trial violated his right to a speedy trial under the United States and Indiana Constitutions. The analysis of a claim involving a speedy trial right is the same under both the state and federal constitutions. *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind. 1998), *cert. denied*, 527 U.S. 1035 (1999). The inquiry into whether there was a speedy trial violation involves "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *Barker* dictates the factors to be considered are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right to a speedy trial; and 4) prejudice to the defendant. *Id.*

### A. Length of Delay

The length of the delay acts as a triggering mechanism; a delay of more than a year post-accusation is "presumptively prejudicial" and triggers the *Barker*

analysis. *Vermillion v. State*, 719 N.E.2d 1201, 1206 (Ind. 1999) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). If the length of the delay meets this threshold, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

As the State concedes, there is no doubt the delay in bringing Johnson's case to trial exceeded one year. Johnson was arrested and charged on May 22, 2012. Johnson's trial occurred on September 27, 2016. The delay is therefore presumptively prejudicial. Moreover, the delay was more than four times longer than the threshold requirement of one year. As a result, this factor weighs against the State, but the other *Barker* factors must also be considered.

## B. Reason for Delay

When considering the reason for delays, we look at "whether the government or the criminal defendant is more to blame for that delay." *Doggett*, 505 U.S. at 651 (1992). In *Barker*, the Court determined that

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

407 U.S. at 531.

[14] Johnson concedes the State did not delay the trial in order to hamper the defense. *See* Appellant's Brief at 14. Johnson also concedes his two changes of counsel contributed to the delays. *Id.* However, Johnson argues the State acquiesced in many of the delays. As a result, Johnson contends this factor weighs in his favor. We disagree.

[15] The following chart shows the relevant delays in this case, along with the reason, and whether the defendant is responsible, for each delay following the initial trial date of September 18, 2012:

| Delayed until: | Reason: | Attributed to Defendant: |
| --- | --- | --- |
| February 26, 2013 | Court congestion | |
| June 26, 2013 | Johnson's competency hearing on May 6, 2013 | Yes |
| | Court congestion | |
| September 17, 2013 | Court congestion | |
| December 10, 2013 | Johnson's continuance | Yes |
| February 18, 2014 | Johnson's continuance | Yes |
| June 3, 2014 | Court congestion | |
| September 23, 2014 | Johnson's motion to set case for disposition (no agreement was reached) | Yes |

| December 1, 2015 | Johnson's second psychiatric evaluation | Yes |
| --- | --- | --- |
| December 14, 2015 | Changed by request | Unclear |
| September 27, 2016 | Johnson's change of counsel | Yes |

[16] Court congestion resulted in delays totaling slightly less than thirteen months. As *Barker* provides, these delays must be considered against the State, but are weighed less heavily than deliberate attempts to delay the trial. Meanwhile, every other delay in this case, which lasted over four years, is attributable to Johnson: Johnson requested, and was granted, two psychiatric evaluations; Johnson filed, and was granted, two motions for continuance; Johnson requested a dispositional hearing although no agreement was reached; and Johnson's counsel withdrew from the case immediately before trial. Johnson's own actions delayed the case for more than three years.

[17] Further, the State objected to some of the delays caused by Johnson. The State objected to Johnson's motion for a second psychiatric evaluation, specifically noting the previous delays in the case. Appellant's Appendix, Volume II at 48. The State also objected to Johnson's motions for a third continuance and a third competency hearing, which Johnson made just days before trial. Both motions were denied.

[18] In sum, while the delays due to court congestion are considered against the State, Johnson caused over three additional years of delay and attempted to

delay trial even further while the State objected to further delays. As a result, this factor weighs against Johnson.

## C.  Assertion of Right

[19]  "In order to claim a constitutional violation of the right to a speedy trial, defendant must assert such right." *Lee v. State*, 684 N.E.2d 1143, 1146 (Ind. 1997). Johnson concedes he never "formally asserted" his right to a speedy trial. Appellant's Br. at 15. Instead, Johnson argues it was clear he was unhappy about the delays. Johnson points to a competency report filed with the court by Dr. Frank Krause. In the report, Dr. Krause described Johnson as "quite agitated and uncooperative, as he began to express anger about his charges and how long he had been incarcerated." Appellant's App., Vol. II at 178. Johnson also points to a comment made by his counsel at a competency hearing on May 6, 2013. Johnson's counsel stated Johnson "indicated to me in conversations here today that he wants to go to trial." Tr., Vol. I at 6. Johnson contends these comments show his displeasure with the delay of his case. As a result, Johnson argues this factor is a "toss-up" between favoring him or the State. Appellant's Br. at 15. We disagree.

[20]  Dr. Krause noted in his report that Johnson was displeased with his incarceration, and Johnson's counsel mentioned he wanted to go to trial. Johnson never articulated his displeasure with his incarceration, or his desire to go to trial, as an assertion of his right to a speedy trial. Johnson also did not object on constitutional grounds to the setting of any trial date and never asserted his right to a speedy trial until this appeal.

Further, Johnson's actions throughout this case show he did not desire a speedy trial. Dr. Krause explained to Johnson that cooperating with him would help the case progress faster, but Johnson refused to answer Dr. Krause's questions. Appellant's App., Vol. II at 178. As noted above, Johnson delayed the case himself by requesting numerous psychiatric evaluations, continuances, and a dispositional hearing. After more than four years, Johnson attempted to delay this case even longer by filing another motion for continuance and another motion for a competency hearing just four days before his trial date.

In sum, not only did Johnson fail to assert his right to a speedy trial until after his trial, he took active steps to avoid one. As a result, this factor weighs heavily against Johnson.

## D. Prejudice to Johnson

"The final factor in the *Barker* test, prejudice, is assessed in light of the three interests which the right to a speedy trial was designed to protect: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Sweeney*, 704 N.E.2d at 103 (citing *Barker*, 407 U.S. at 532). The most important of the three is limiting the possibility of defense impairment. *Barker*, 407 U.S. at 532. The burden is on the defendant to show actual prejudice to prove a speedy trial deprivation. *Sturgeon v. State*, 683 N.E.2d 612, 617 (Ind. Ct. App. 1997), *trans. denied*.

Johnson concedes there is no indication the delay in this case "directly undermined or impaired the defense." Appellant's Br. at 15. In fact, Johnson concedes the evidence against him was "overwhelming" and this case was a "slam dunk" for the prosecution from the start. *Id.* at 12. Rather, Johnson's only claim of prejudice is that his comments to Dr. Krause show he suffered anxiety and stress because of the delays. *See supra* ¶ 19. As a result, he argues this factor weighs in his favor. We disagree.

Although Johnson waited a considerable amount of time for trial and may have suffered anxiety in awaiting trial, the majority of the delays were caused by his own actions. *See supra* ¶ 16. Further, as noted above, Johnson has conceded the most important factor that his defense was not impaired and makes no allegation concerning oppressive pretrial incarceration. Accordingly, we find this factor weighs against Johnson.

In sum, considering Johnson caused the majority of the delays, never asserted his right to a speedy trial before this appeal, and failed to show he was prejudiced by the delays, we hold his constitutional right to a speedy trial was not violated.

# Conclusion

Johnson's constitutional right to a speedy trial was not violated. Accordingly, we affirm.

Affirmed.

Vaidik, C.J., and Bailey, J., concur.