**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 29 2012, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD D. MARTIN**
Frankfort, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CORNELIO MARTINEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 12A02-1111-CR-1023 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLINTON SUPERIOR COURT
The Honorable Justin H. Hunter, Judge
Cause No. 12D01-0701-FD-16

**May 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Cornelio Martinez appeals following his conviction for Class D felony Operating a Vehicle While Intoxicated[1] ("OWI") and the determination that he is a Habitual Controlled Substance Offender.[2] Specifically, Martinez contends that the trial court abused its discretion in granting the State's motion to correct error without first granting him the opportunity to respond and in admitting certain evidence at trial. We affirm.

**FACTS AND PROCEDURAL HISTORY**

At approximately 11:00 p.m. on January 27, 2007, Clinton County Sheriff's Department Reserve Deputy Rick Sturgess was parked on the side of State Road 28. The area was a construction zone with multiple, clearly-displayed signs indicating that the speed limit was forty-five miles per hour ("45 mph"). The road, which was normally four lanes and had a speed limit of fifty-five miles per hour ("55 mph"), was limited to two lanes and had the lower posted speed limit due to the construction and was marked as a no-passing zone.

Deputy Sturgess observed Martinez's vehicle traveling at a speed that he believed to be in excess of the posted speed limit. Deputy Sturgess used his radar to measure Martinez's speed at 55 mph. As Martinez passed Deputy Sturgess's cruiser, Deputy Sturgess saw Martinez's vehicle drift left of the solid center line on the road. Deputy Sturgess activated his headlights and followed Martinez's vehicle. While following Martinez's vehicle, Deputy Sturgess saw the tires on Martinez's vehicle drift across the center line for a second time. Deputy Sturgess activated his emergency lights and initiated a traffic stop. During the traffic

---

[1] Ind. Code § 9-30-5-2 (2006).

[2] Ind. Code § 35-50-2-10(b) (2006).

stop, Deputy Sturgess collected evidence which indicated that Martinez was driving while intoxicated.

On January 29, 2007, the State charged Martinez with Class D felony OWI and Class D felony operating a vehicle with an alcohol concentration equivalent of .15 or greater. The State also alleged that Martinez is a habitual controlled substance offender. On March 27, 2008, Martinez pled guilty to Class D felony operating while intoxicated and admitted that he is a habitual controlled substance offender. The trial court accepted Martinez's guilty plea, and on April 21, 2008, sentenced him to an aggregate five-year term of incarceration.

On October 25, 2010, Martinez filed a petition for post-conviction relief. On January 3, 2011, the post-conviction court granted Martinez relief and issued an order setting aside Martinez's conviction, finding that the trial court had failed to advise him of his *Boykin*[3] rights and had incorrectly advised him of the minimum possible sentence for the habitual controlled substance offender enhancement. The trial court subsequently scheduled trial for September 13, 2011.

On August 18, 2011, Martinez filed a motion for discharge in which he alleged that the State had failed to bring him to trial within the one-year time limitation set forth by Indiana Criminal Rule 4(C). The trial court conducted a hearing on Martinez's motion on September 6, 2011. The trial court granted Martinez's motion for discharge on September 7, 2011.

---

[3] *Boykin v. Alabama*, 395 U.S. 328 (1969).

On September 8, 2009, the State filed a motion to correct error in which it alleged that the trial court had erroneously granted Martinez's motion for discharge. Later that day, the trial court conducted a telephonic hearing at which both the State and Martinez were represented by counsel. This hearing was unrecorded. After considering the arguments made by the parties during the telephonic hearing, the trial court granted the State's motion to correct error on September 9, 2009.

On September 12, 2011, Martinez filed a motion to correct error and a motion to suppress the evidence obtained as a result of the traffic stop. The trial court denied Martinez's motion to correct error.[4] On September 13, 2011, the trial court conducted a hearing on Martinez's motion to suppress. The trial court denied the motion. The parties agreed to incorporate the evidence from the suppression hearing into trial and proceeded to trial.

Following the conclusion of trial, the trial court found Martinez guilty of OWI and operating with an alcohol concentration equivalent of .15 or greater, as Class A misdemeanors, enhanced the convictions to Class D felonies, and found Martinez to be a habitual controlled substance offender. On November 14, 2001, the trial court sentence Martinez to one and one-half years for the OWI conviction, enhanced by three years by virtue of the habitual controlled substance offender finding. This appeal follows.

**DISCUSSION AND DECISION**

---

[4] Martinez does not challenge the trial court's denial of his motion to correct error or allege that the trial court abused its discretion by denying it without first giving the State an opportunity to respond.

4

## I. Motion to Correct Error

Martinez contends that the trial court abused its discretion in granting the State's motion to correct error.

> A trial court has wide discretion to correct errors and to grant new trials. *De Vittorio v. Werker Bros., Inc.* (1994), Ind. App., 634 N.E.2d 528, 530; Ind. Crim. Rule 16(B). We will reverse only for an abuse of discretion. *Id.* An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.*

*Gregor v. State*, 646 N.E.2d 52, 53 (Ind. Ct. App. 1994).

The record demonstrates that Martinez's conviction was overturned and the matter remanded for trial after the post-conviction court issued an order granting Martinez relief. The matter was subsequently scheduled for trial on September 13, 2011. Martinez filed a motion for discharge on August 18, 2011, arguing that the State had failed to bring him to trial within one year as required by Indiana Criminal Rule 4(C). The trial court granted Martinez's motion for discharge on September 7, 2011. On September 8, 2011, the State filed a motion to correct error. Later that same day, the trial court conducted an unrecorded telephonic hearing on the State's motion. It is undisputed that both the State and Martinez were represented at this hearing by counsel. After considering the parties' arguments made during the telephonic hearing, the trial court granted the State's motion on September 9, 2011, and vacated its prior discharge order.

## A. Opportunity to be Heard

5

Martinez argues that the trial court abused its discretion in granting the State's motion one day after it was filed because, in doing so, the trial court denied him the opportunity to file a statement in opposition pursuant to Indiana Trial Rule 59(E). Trial Rule 59(E) provides in relevant part that "Following the filing of a motion to correct error, a party who opposes the motion may file a statement in opposition to the motion to correct error no later than fifteen (15) days after service of the motion." For its part, the State argues that the trial court did not abuse its discretion because Martinez was represented by counsel at the telephonic hearing conducted by the trial court and, as such, was afforded the opportunity to respond to the State's motion.

In support of his claim, Martinez relies on a panel of this court's opinion in *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998), in which the court concluded that the trial court abused its discretion in granting the Appellee's motion to correct error without first giving the Appellant the opportunity to respond to the motion. While this case is similar to *Hubbard* in that, in both cases, the trial court granted the moving party's motion to correct error before the other party had the opportunity to file a written statement in opposition to the motion, *see Hubbard*, 690 N.E.2d at 1220 n.1, *Hubbard* is distinguishable. Unlike in *Hubbard*, Martinez was given the opportunity to respond to the State's motion to correct error during a telephonic hearing at which he was represented by counsel. Given that Trial Rule 59(E) was "designed to expressly create an opportunity for the opponent of the motion to respond[,]" *see Ralston v. State*, 412 N.E.2d 239, 245 (Ind. Ct. App. 1980) (discussing the purpose of Indiana Trial Rule 59(F)(1), which has since been recodified as Indiana Trial Rule

59(E)), it would elevate form over substance to rule in Martinez's favor when such an opportunity was, in fact, afforded to him.

In any event, any error in granting the State's motion without first giving Martinez the opportunity to file a written statement in opposition could, at most, be considered harmless because as we discuss next, the relevant controlling authority demonstrates that the trial court properly granted the State's motion.

### B. Applicability of Indiana Criminal Rule 4(C)

"The Indiana Supreme Court has held that the time limitations of Indiana Criminal Rule 4(C) do not apply on retrial." *State v. Montgomery*, 901 N.E.2d 515, 519 (Ind. Ct. App. 2009) (citing *Lahr v. State*, 615 N.E.2d 150, 151 (Ind. Ct. App. 1993)). "Instead, where retrial is required, a defendant must rely on his constitutional speedy trial right, which requires that a defendant be tried within a reasonable time." *Id.*

Here, Martinez's conviction for Class D felony OWI was set aside by the post-conviction court because of trial court error. In light of the post-conviction court's order granting Martinez relief, the trial court scheduled a trial for September 13, 2011. Because the September 13, 2011 trial was only necessary after Martinez's conviction was set aside, we believe that the September 13, 2011 trial was equivalent to a retrial following a reversal of an individual's conviction on appeal. Moreover, we do not see why this rule would not apply in situations where a conviction following a guilty plea has been set aside. Thus, we conclude that the trial court was required to conduct a trial within a reasonable time of the date the post-conviction court's order was issued. *See id.*

7

"In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court articulated a balancing test to be used when evaluating a speedy trial claim under the United States Constitution." *Sturgeon v. State*, 683 N.E.2d 612, 616 (Ind. Ct. App. 1997), *trans. denied*. Indiana has employed the same balancing test to evaluate speedy trial claims pursued under our state constitution. *Id.* (citing *Crawford v. State*, 669 N.E.2d 141, 145 (Ind. 1996); *Fortson v. State*, 269 Ind. 161, 379 N.E.2d 147 (1978)). The balancing involves an evaluation of both the State's and the defendant's conduct, taking into consideration such factors as: the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant. *Id.* (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192).

*Id.* at 520.

Whether a particular delay in bringing a defendant to trial is such as to implicate the defendant's constitutional rights to a speedy trial depends largely on the peculiar circumstances of the case. *Lahr*, 615 N.E.2d at 152 (citing *Barker*, 407 U.S. at 530-31; *O'Neill v. State*, 597 N.E.2d 379, 381 (Ind. Ct. App. 1992)).

"*Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balanc[ing test which courts should apply in determining whether a particular defendant has been deprived of his right to a speedy trial]*. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."

*Lahr*, 615 N.E.2d at 152 (quoting *Barker*, 407 U.S. at 530-31) (emphasis added).

Here, the post-conviction court issued its order granting Martinez relief on January 3, 2011, and the trial court scheduled the matter for a trial on September 13, 2011. Approximately eight months passed between the post-conviction court's order which

necessitated the need for a trial and the trial date set by the court. It seems reasonable that some delay would be necessary as both the State and Martinez would require time to prepare for a trial relating to an incident that occurred nearly four and one-half years before Martinez's conviction was set aside. Martinez has not provided any authority suggesting that an eight-month delay was presumptively prejudicial, and we find none.

In addition, Martinez has failed to show that he suffered actual prejudice during the intervening eight months between the date his conviction was set aside and the date his case proceeded to trial.

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Montgomery*, 901 N.E.2d at 522 (quoting *Barker*, 407 U.S. at 532). The burden is on the defendant to show he was actually prejudiced by the delay. *Id.* (citing *Sturgeon*, 683 N.E.2d at 617).

Martinez has not provided any argument or pointed to any evidence indicating that he suffered any actual prejudice during the intervening eight months between the post-conviction court's order setting aside his conviction and the September 13, 2011 trial date. In addition, Martinez does not claim that the eight-month delay is the result of a deliberate

9

attempt by the State to delay the trial in order to hamper his defense. As such, he has failed

to carry his burden of showing that he was actually prejudiced by the eight-month delay. *See*

*id*.

Because Martinez has failed to show that the eight-month delay was presumptively

prejudicial or that he was prejudiced by the eight-month delay, we conclude that it was not

unreasonable. Thus, the eight-month delay did not violate Martinez's right to a speedy trial.[5]

 *See Montgomery*, 901 N.E.2d at 519-23; *Lahr*, 615 N.E.2d at 152-54.

## II. Admission of Evidence

Martinez also contends that the trial court abused its discretion in denying his motion

to suppress certain evidence obtained during the traffic stop because "no traffic violation was

committed," and Deputy Sturgess "did not have reasonable suspicion that a crime was being

committed." Appellant's Br. p. 29. Although Martinez originally challenged the admission

of the evidence through a pre-trial motion to suppress, he appeals following a completed

bench trial and thus challenges the admission of such evidence at trial. "Accordingly, 'the

issue is more appropriately framed as whether the trial court abused its discretion by

admitting the evidence at trial.'" *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007)

(quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

> Our standard of review for rulings on the admissibility of evidence is
> essentially the same whether the challenge is made by a pre-trial motion to
> suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-
> 75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the

---

[5] Having concluded that the eight-month delay following the post-conviction court's order that set
aside Martinez's conviction was not unreasonable and did not violate Martinez's right to a speedy trial, we
need not consider the parties' arguments relating to the allocation of days attributable to each party or waiver.

evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id*.

*Id*.

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington*, 784 N.E.2d at 587 (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

Martinez argues that the trial court abused its discretion in admitting the evidence stemming from the traffic stop because he did not commit a traffic infraction and Deputy Sturgess lacked reasonable suspicion to stop his vehicle. "'It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation.'" *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind. Ct. App. 2005) (quoting *Peete v. State,* 678 N.E.2d 415, 419 (Ind. Ct. App. 1997)). Where no traffic infraction has been committed, the police officer may initiate an investigatory stop if the officer has reasonable suspicion of criminal activity at the time he makes the stop. *See Barrett v. State*, 837 N.E.2d 1022, 1027 (Ind. Ct. App. 2005).

Here, Deputy Sturgess initiated the traffic stop after he measured Martinez's vehicle

11

traveling at a speed of 55 mph. It is undisputed that the normal speed limit for the stretch of road on which Martinez was traveling was 55 mph. However, due to the ongoing road construction and lane restrictions, signage indicated that the posted speed limit on the road was 45 mph. Indiana Code section 9-21-8-41 indicates, in relevant part, that:

> (a) A person who drives a vehicle or street car may not disobey the instructions of an official traffic control device placed in accordance with this article unless otherwise directed by a police officer.
>
> ****
>
> (c) All traffic shall observe and obey traffic control devices including signals, signs, and warnings, and all directions, signs, or warning devices that may be given or displayed by a police officer or flagman to safely control traffic movement at a worksite and promote safety at a worksite.

In arguing that the traffic stop was not proper, Martinez concedes that he was driving at a rate of 55 mph at the time of the stop, but claims that his speed did not constitute a traffic violation. Martinez argues that he was not obligated to follow the posted 45 mph speed limit because there were no construction workers present at the time of the traffic stop and the State has failed to prove that the establishing authority had determined that the safety of the traveling public required enforcement of the worksite speed limit. *See* Indiana Code section 9-21-5-11(c) (providing that reduced speed is only required when construction workers are present or when the establishing authority determines that the safety of the traveling public requires enforcement of the worksite speed limit). We disagree and conclude that the placement of a sign imposing a 45 mph speed limit indicates that the establishing authority had deemed the lower speed limit necessary. As such, Martinez was required to follow the posted 45 mph speed limit, and he committed a traffic violation by traveling in excess of the

12

posted speed limit. In addition, Deputy Sturgess testified that he pulled Martinez's vehicle over after he saw the tires on the left side of Martinez's vehicle twice cross the solid yellow center line in violation of Indiana Code section 9-21-8-2(a). Accordingly, because Martinez committed a traffic violation by admittedly traveling at a rate in excess of the posted 45 mph speed limit and by twice crossing the solid the yellow center line in violation of Indiana Code section 9-21-8-2(a), the traffic stop was justified and the trial court did not abuse its discretion in admitting the evidence that stemmed from the traffic stop.[6] *See Datzek*, 838 N.E.2d at 1154 (providing that "[i]t is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction"); *Osborne v. State*, 805 N.E.2d 435, 439 (Ind. Ct. App. 2004) (providing that the "decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred"), *trans. denied*.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.

---

[6] Having concluded that the traffic stop was justified because Martinez was traveling in excess of the posted 45 mph speed limit and because his tires twice crossed the solid yellow center line in violation of Indiana Code section 9-21-8-2(a), we need not consider whether, if no traffic violation occurred, whether Deputy Sturgess had the reasonable suspicion of criminal activity necessary to conduct an investigatory stop.