STATE of Indiana, Appellant–Plaintiff,

v.

Robin MONTGOMERY, Appellee–Defendant.

No. 58A01–0806–CR–273.

Court of Appeals of Indiana.

Feb. 16, 2009.

court has not ordered James to pay Jane's appellate attorney fees.

Alison T. Frazier, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

The State of Indiana appeals the trial court's grant of Robin Montgomery's motion for discharge. The State raises two issues, which we revise and restate as whether the trial court erred when it granted the motion. We remand.

The relevant facts follow. On May 22, 2001, a grand jury indicted Montgomery on two counts of arson and one count of fraud. *Montgomery v. State*, 804 N.E.2d 1217, 1220 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* On December 23, 2002, a jury found Montgomery guilty as charged, and the trial court sentenced him to twelve years with six years suspended. *Id.* On appeal, we reversed his convictions because of ineffective assistance of trial counsel, and, finding that there was sufficient evidence presented at trial to sustain the convictions, we remanded for a retrial. *See id.* at 1225. The State filed a petition for rehearing, which we denied on June 21, 2004. On September 16, 2004, the Indiana Supreme Court denied the State's petition to transfer, and our appellate decision was certified.

On October 14, 2004, the trial court held a pretrial conference and scheduled a jury trial for April 26, 2005. On November 22, 2004, Montgomery's new defense counsel

filed an appearance and a discovery motion seeking to discover, among other things, "all photographs which the State of Indiana intends to ... offer into evidence at the trial of this cause of action." Appellant's Appendix at 73. On March 31, 2005, Montgomery moved to continue the trial, and the trial court granted the motion, rescheduling the trial for October 25, 2005. On April 15, 2005, Montgomery requested a continuance, and the trial court rescheduled the trial for November 9, 2005. At a hearing on September 29, 2005, Montgomery again moved to continue the trial, and the trial court granted the motion and reset the trial for June 27, 2006.

On January 12, 2006, the trial court denied Montgomery's motion in limine seeking to exclude certain evidence. On February 13, 2006, on Montgomery's motion, the trial court certified its order for interlocutory appeal, and, on April 24, 2006, we denied Montgomery's motion requesting that we accept jurisdiction of the appeal.

On May 23, 2006, the trial court issued an order scheduling the jury trial for October 18, 2006. On August 25, 2006, Montgomery filed a motion to compel discovery alleging that the State had failed to produce "additional recorded statements," including a videotaped statement of Jodi Gould and certain physical evidence, including a lamp, lamp parts, and electrical parts. Id. at 114. The State filed a supplemental discovery response alleging that it had provided Montgomery with the only known videotaped statement by Jodi Gould and that the physical evidence sought by Montgomery was in the possession of EFI, an insurance investigation firm located in Michigan. The trial court granted Montgomery's motion. On September 21, 2006, Montgomery renewed his motion to compel discovery, arguing that the State was authorized under Ind.Code §§ 27–2–13–1 and –2 to obtain the requested discovery from EFI and General Casualty, and moved to continue the trial. The trial court continued the trial to March 27, 2007, and, on October 19, 2006, ordered the State to produce "potential evidence in this case held by General Casualty and EFI and the video taken of Jodi Gould" within thirty days. Id. at 128. On October 26, 2006, because of a scheduling conflict with another case, the State moved to continue the trial, and the trial court granted the motion and reset the trial for May 22, 2007.

On November 16, 2006, the State filed a motion for extension of time to respond to the trial court's discovery order, which the trial court granted, extending the deadline to December 18, 2006. On December 18, 2006, the State requested another extension, and the trial court extended the deadline to February 18, 2007. On January 11, 2007, after a hearing, the trial court ordered the State to provide Montgomery with "the requested physical evidence and copies of [requested video]tapes by February 11, 2007." Id. at 141.

On February 15, 2007, the State filed a supplemental discovery answer stating that the requested lamp components and electrical parts were available for viewing at the prosecutor's office. At a pretrial conference on March 8, 2007, the trial court continued the trial to June 26, 2007. On May 3, 2007, the parties agreed by telephone to continue the trial to September 25, 2007. On June 14, 2007, the State filed a supplemental discovery answer, to which was attached an audio cassette of the Jodi Gould interview by EFI. At a pretrial conference on September 13, 2007, the trial court continued the jury trial to November 27, 2007.

On September 20, 2007, Montgomery moved for a continuance because of a scheduling conflict, and the trial court con-

tinued the trial to January 29, 2008. On January 11, 2008, Montgomery again moved for a continuance because he was unprepared, and the trial court scheduled the trial for April 22, 2008. The trial court ordered the parties to "make an up to date exchange of lists of witnesses and exhibits they intend to use at trial by February 17, 2008" and to "make a final exchange of lists of witnesses which they intend to use at trial by March 15, 2008." *Id.* at 220. On February 19, 2008, the State filed a motion to vacate the April 22, 2008 trial date and requested an earlier date. On February 28, 2008, Montgomery filed an objection arguing that the State had failed to exchange lists of witnesses and exhibits it intended to use at trial and moving for dismissal of the case. The trial court rescheduled the trial for May 13, 2008.

In April 2008, Montgomery and the State exchanged several discovery notices. On May 1, 2008, the State filed a supplemental discovery answer and attached 200 color photographs from the crime scene it intended to use at trial. On May 8, 2008, Montgomery filed a motion for discharge. At a hearing on the motion that same day, Montgomery alleged that he had never seen some of the photographs provided by the State, that his expert Dr. Hurst believed some of them were exculpatory, and that he was unable to prepare his defense in time for trial. Montgomery argued that discharge was proper under Ind.Crim. Rule 4(C) and the United States and Indiana Constitutions because of the State's discovery violations and delay in bringing him to trial. The State responded that Montgomery had previously seen

the photographs and deposed the people who had taken them. The trial court granted Montgomery's motion and discharged the case.

■ The issue is whether the trial court erred when it granted Montgomery's motion for discharge. The Indiana Supreme Court has held that the time limitations of Indiana Criminal Rule 4(C) do not apply on retrial. *Lahr v. State,* 615 N.E.2d 150, 151 (Ind.Ct.App.1993) (citing *Nelson v. State,* 542 N.E.2d 1336, 1338 (Ind.1989)). Consequently, to the extent that the trial court discharged the case against Montgomery because of a violation of his right to a speedy trial under Rule 4(C), we hold that the trial court erred.

■ Instead, when a retrial is required, a defendant must rely on his constitutional speedy trial right, which requires that a defendant be tried within a reasonable time. *Id.* (citing *Fryback v. State,* 272 Ind. 660, 400 N.E.2d 1128, 1131 (Ind.1980), *reh'g denied; State ex rel. Brumfield v. Perry Circuit Court,* 426 N.E.2d 692, 694–95 (Ind.1981); *Driver v. State,* 594 N.E.2d 488, 491 (Ind.Ct.App. 1992), *trans. denied* ). Where retrial is mandated by appellate decision, the reasonable time determination involves the lapse of time from certification of the appellate decision, at which point the trial court reassumes jurisdiction of the cause, to the retrial. *Id.* at 152 (citing *United States v. Kimberlin,* 805 F.2d 210 (7th Cir.1986), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987)). Here, that delay is from September 16, 2004, until May 13, 2008.[1]

---

1. The trial court found that the "delays caused by the State's motions and petitions to the Indiana Court of Appeals and the Indiana Supreme Court are attributable to the State of Indiana." Appellant's Appendix at 300. However, under *Lahr,* the reasonable time determination begins at the moment of

certification of the appellate decision. *See* 615 N.E.2d at 152. Ind. Appellate Rule 65(E) provides in relevant part that the Clerk "shall certify the opinion or memorandum decision to the trial court or Administrative Agency only after the time for all Petitions for Rehearing, Transfer, or Review has ex-

"In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court articulated a balancing test to be used when evaluating a speedy trial claim under the United States Constitution." *Sturgeon v. State*, 683 N.E.2d 612, 616 (Ind.Ct.App.1997), *trans. denied.* Indiana has employed the same balancing test to evaluate speedy trial claims pursued under our state constitution. *Id.* (citing *Crawford v. State*, 669 N.E.2d 141, 145 (Ind.1996); *Fortson v. State*, 269 Ind. 161, 379 N.E.2d 147 (1978)). The balancing involves an evaluation of both the State's and the defendant's conduct, taking into consideration such factors as: the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant. *Id.* (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192).

### A. *Length of Delay*

■■■ "The United States Supreme Court identified this factor as 'to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.* at 616–617 (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). The amount of time constituting a presumptively prejudicial delay depends upon the peculiar circumstances of the case. *Id.* at 617 (citing *Barker*, 407 U.S. at 530–31, 92 S.Ct. at 2192).

The delay in the present case spanned over three years and seven months between September 16, 2004 and May 13, 2008. Although the record reveals that much of this delay can be attributed to

Montgomery, we have previously held that a delay of eighteen months between appellate reversal of a conviction and retrial was sufficient to trigger inquiry into the *Barker* balancing test. *See Lahr*, 615 N.E.2d at 152. We reached this conclusion "without 'concern[ing] ourselves with the particular circumstances' of the case." *Sturgeon*, 683 N.E.2d at 617 (quoting *Lahr*, 615 N.E.2d at 152). Following such precedent, we hold that the delay of over three years and seven months is presumptively prejudicial and triggers an inquiry into the other factors.

### B. *Reason for Delay*

The Indiana Supreme Court has clarified:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*State v. Azania*, 865 N.E.2d 994, 1002 (Ind. 2007) (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192). *clarified on reh'g*, 875 N.E.2d 701 (Ind.2007).

The record reveals that, at the pretrial conference on November 14, 2004, the trial court scheduled the jury trial for April 26, 2005. Montgomery then moved to continue the trial numerous times, with the trial court ultimately rescheduling the trial for

---

pired, unless all the parties request earlier certification." Here, our appellate decision was certified to the trial court on September 16, 2004, when the Indiana Supreme Court denied the State's petition to transfer. Ac-

cordingly, the delays caused by the State's petitions for rehearing and transfer were not part of the reasonable time determination, and the trial court erred to the extent it found otherwise.

June 27, 2006. On May 23, 2006, after we denied Montgomery's motion to accept jurisdiction of his interlocutory appeal, the trial court issued an order scheduling the jury trial for October 18, 2006. On August 25, 2006, Montgomery filed a motion to compel discovery, and the State filed a response claiming that an insurance investigator was in possession of the physical evidence sought by Montgomery. The trial court granted Montgomery's motion. On September 21, 2006, Montgomery renewed his motion to compel, arguing that under Ind.Code §§ 27-2-13-1 and -2 the State was authorized to obtain the requested discovery from the insurance investigator, and moved for a continuance. The trial court granted both motions, rescheduling the trial for March 27, 2007. On October 26, 2006, the State moved for a continuance because of a scheduling conflict, and the trial court rescheduled the trial date from March 27, 2007, to May 22, 2007. Thus, the delay of 187 days between Montgomery's September 21, 2006 request for a continuance and the March 27, 2007 trial date occurred because of the State's failure to comply with Montgomery's discovery request. The delay of 56 days between the March 27, 2007 trial date and the May 22, 2007 trial date occurred because of the State's motion for a continuance because of a scheduling conflict.

The trial court then continued the trial numerous times, either on its own motion or by agreement of the parties, finally rescheduling the trial for November 27, 2007. The record does not indicate the reason for these continuances.[2] On September 20, 2007, Montgomery moved for a continuance because of a scheduling con-

flict, and the trial court continued the trial to January 29, 2008. On January 11, 2008, Montgomery again moved for a continuance because he was unprepared, and the trial court scheduled the trial for April 22, 2008. On February 19, 2008, the State filed a motion to vacate the April 22, 2008 trial date and requested an earlier date. Montgomery filed an objection, and the trial court rescheduled the trial for May 13, 2008.

■ In summary, of the more than three years and seven months of delay, 187 days occurred because of the State's failure to comply with Montgomery's discovery request, and 56 days occurred because of the State's scheduling conflict. The rest of the delay occurred because of Montgomery's requests for a continuance or without explanation in the record.

## C. Assertion of Speedy Trial Right

The Indiana Supreme Court has clarified:

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will

---

2. Under Rule 4(C), the one year period within which the State must bring a defendant to trial is extended by: (1) a defendant's motion for a continuance; (2) a delay caused by the defendant's act; or (3) congestion of the court calendar. *Isaacs v. State*, 673 N.E.2d 757,

762 (Ind.1996). We stress that, in the present case, we are not charging delays to the State or Montgomery as we would under a Rule 4(C) analysis. Rather, under the constitutional right to a speedy trial, we consider simply the reasons for the delay.

make it difficult for a defendant to prove that he was denied a speedy trial.

*Azania,* 865 N.E.2d at 1002–1003(quoting *Barker,* 407 U.S. at 531–532, 92 S.Ct. at 2192–2193).

Here, the record reflects that the first mention of a speedy trial issue occurred at a hearing on Montgomery's motion for discharge on May 8, 2008, the day he filed it. Thus, Montgomery did not raise the issue until over three years and seven months had passed from the certification of our appellate decision reversing his convictions. Furthermore, Montgomery did not object on speedy trial grounds to the setting of any trial date.

#### D. *Prejudice*

Finally, we must consider any prejudice the delay may have caused Montgomery.

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. The burden is on the defendant to show he was actually prejudiced by the delay. *Sturgeon,* 683 N.E.2d at 617.

The prejudice Montgomery asserts is his "great anxiety and concern" over whether he will have to return to prison. Appellee's Brief at 17. We note that Montgomery has not been incarcerated while awaiting retrial. Moreover, he does not allege the death, disappearance, or memory loss of any witnesses. He does not claim that any physical evidence has been lost or destroyed. Thus, the "most serious" component of the prejudice factor, impairment of Montgomery's defense, is absent. *Sturgeon,* 683 N.E.2d at 618.

Placing the foregoing factors in balance, we hold that Montgomery's constitutional right to a speedy trial has not been violated. Although Montgomery complains that the State failed to comply with discovery requests, only 187 days of the delay can be attributed to this failure. An additional delay of 56 days occurred because of a scheduling conflict on the part of the State. The rest of the delay occurred because of Montgomery's requests for a continuance or without explanation in the record. Montgomery did not assert his right to a speedy trial until over three years and seven months had passed. Finally, and most importantly, Montgomery has not carried his burden of establishing that he was prejudiced by the delay. Under these circumstances, we conclude that Montgomery's constitutional right to a speedy trial was not a basis for granting his motion for discharge. *See, e.g., id.* (holding that the defendant's constitutional right to a speedy trial has not been violated).

However, Montgomery also argues that dismissal of the charges was proper because, he alleges, the State withheld certain photographs it intended to use at trial until almost two weeks before trial. Montgomery complains that the State's actions constitute a discovery violation because he had requested all photographs the State

intended to use at trial in his initial discovery motion.

■■ The Indiana Supreme Court has set forth the proper roles of trial and appellate courts with regard to resolution of discovery disputes:

A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated.... The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Lindsey v. State*, 877 N.E.2d 190, 195 (Ind. Ct.App.2007) (quoting *Fosha v. State*, 747 N.E.2d 549, 553–554 (Ind.2001), *overruled on other grounds by Gutermuth v. State*, 868 N.E.2d 427 (Ind.2007)), *trans. denied.* If a remedial measure is warranted, a continuance is usually the proper remedy. *Id.* at 196. Where the State's actions were deliberate and the conduct prevented a fair trial, a more extreme remedial measure—exclusion of evidence—may be employed. *Id.* (citing *Berry v. State*, 715 N.E.2d 864 (Ind.1999)). Dismissal of charges is also a sanction within the arsenal of the trial judge in dealing with the failure of the prosecution to afford the defense access to evidentiary materials as ordered. *Robin-*

*son v. State*, 450 N.E.2d 51, 52 (Ind.1983). In considering whether dismissal was proper, the primary elements for a court's consideration are whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *See id.*

■ Here, the State maintains that Montgomery "was aware of the photographs, had access to them, and had even seen them in the presence of the fire investigator who possessed them." Appellant's Brief at 16. However, the State has failed to cite any evidence in support of these assertions. On November 22, 2004, Montgomery's new defense counsel filed a discovery motion seeking to discover "all photographs which the State of Indiana intends to ... offer into evidence" at trial. Appellant's Appendix at 73. The State did not comply with this discovery request until May 1, 2008, over three years and five months later. Montgomery's expert witness, Dr. Hurst, believed that some of the photographs were exculpatory, but Montgomery was unable to prepare his defense in time for trial. In light of the State's pattern of failure in complying with Montgomery's discovery requests and the trial court's orders, we do not find clear error in the trial court's grant of Montgomery's motion for discharge.

■ However, the trial court's order is unclear as to the basis for Montgomery's discharge. The order addresses both speedy trial and discovery issues interchangeably and then concludes that the motion for discharge should be granted. We find that remand is appropriate for the court to clarify its basis for discharge.

Remanded.

ROBB, J. and CRONE, J., concur.