**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**PAUL MATTHEW BLANTON**
**JEFFREY K. BRANSTETTER**
Blanton & Branstetter, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH PETERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A01-1108-CR-330 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable R. Michael Cloud, Special Judge
Cause No. 59C01-0608-FA-55

**July 31, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Joseph Peters (Peters), appeals the trial court's denial of his motion to dismiss.

We affirm.

## ISSUE

Peters raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it denied his motion to dismiss in which he alleged that the State had failed to bring him to trial in a timely manner.

## FACTS AND PROCEDURAL HISTORY

On August 18, 2006, the State filed an Information charging Peters with Count I, child molesting, a Class A felony, Ind. Code § 35-42-4-3(a)(1), and Count II, child molesting, a Class C felony, I.C. § 35-42-4-3(b). On August 21, 2006, the trial court held an initial hearing and set a trial date of February 13, 2007. Three days later, the trial court judge, Judge Larry R. Blanton (Judge Blanton), recused himself due to a conflict and appointed Judge K. Lynn Lopp (Judge Lopp) as his replacement. On August 29, 2006, Judge Lopp accepted the appointment. On September 13, 2006, Peters was released from incarceration after posting bond and was placed on electronic monitoring. Subsequently, on October 11, 2006, the trial court *sua sponte* rescheduled Peters' trial for May 21, 2007. On December 12, 2006, the trial court vacated that date and reset the trial again for June 11, 2007.

2

On May 21, 2007, Peters filed a motion to continue the jury trial date because his counsel had another jury trial scheduled for the same day. The trial court granted the motion and rescheduled the trial for September 11, 2007. However, on August 30, 2007, shortly before the trial was scheduled to commence, the trial court moved the date due to court congestion and reset the trial for February 12, 2008. On February 1, 2008, the trial court again moved the trial, citing court congestion, and reset the trial for July 29, 2008. On July 16, 2008, the State filed another motion for a continuance. In response, on July 29, 2008, the trial court reset the new trial date for December 16, 2008 and scheduled a hearing on the pending motions for November 19, 2008.

On November 19, 2008, the day of the hearing on the pending motions, Peters filed a motion to dismiss on Criminal Rule 4(C) grounds, alleging that the State had failed to bring him to trial within 365 days of charging him. The trial court vacated the pending trial, scheduled a hearing on Peters' motion for December 16, 2008, and reset the trial for May 5, 2009. On December 16, 2008, during the hearing on Peters' motion, Peters and the State agreed that the delay between the trial dates of December 16, 2008 and May 5, 2009 would not be considered attributable to the State. After the hearing, the trial court took the matter under advisement, and on January 9, 2009, denied the motion.

On May 5, 2009, jury selection commenced for Peters' trial. However, the following day, the trial court declared a mistrial before the jury could be sworn in, citing an insufficient number of jurors. The trial court subsequently scheduled a new trial date of June 23, 2009, but later reset the date to June 22, 2009. On June 22, 2009, during the

3

State's second attempt to try Peters, the trial court again declared a mistrial before the jury could be sworn in due to an insufficient number of jurors. After this second mistrial, the trial court rescheduled Peters' trial for October 6, 2009.

On October 6, 7, and 13-14, 2009, a third attempt at a jury trial was held. However, on October 14, 2009, the State moved for another mistral. Over Peters' objection, the trial court granted the motion and again declared a mistrial. On November 24, 2009, the trial court scheduled the retrial date for March 15, 2010.

On February 5, 2010, Peters filed a motion to continue the March trial date. Without ruling on the motion, on February 23, 2010, Judge Lopp entered an order of disqualification. The following day, Judge R. Joseph Howell (Judge Howell) was appointed. However, on March 15, 2010, the State objected to Judge Howell's appointment, and the scheduled trial did not commence. The trial court scheduled a hearing for April 5, 2010, and on that date the parties agreed that the matter should be forwarded to the Indiana Supreme Court. On August 13, 2010, our supreme court issued an order requiring Judge Howell to appoint Judge R. Michael Cloud (Judge Cloud) pending Judge Cloud's ability to assume jurisdiction. On November 4, 2010, Judge Cloud entered an appearance and qualification and on November 29, 2010, the trial court scheduled the jury trial to begin August 1, 2011.

On December 13, 2010, Peters filed a renewed motion to dismiss based on Criminal Rule 4(C) and his constitutional right to a speedy trial. On June 23, 2011, the trial court held a hearing on the motion and denied it on July 12, 2011. On July 19, 2011,

4

Peters moved for certification of the trial court's order denying the motion for interlocutory appeal, and on July 27, the trial court entered an amended order denying Peters' motion to dismiss.

Peters now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Peters claims that the trial court abused its discretion when it denied his motion to dismiss because the trial court violated his right to a speedy trial. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Werner v. State,* 818 N.E.2d 26, 28 (Ind. Ct. App. 2004), *trans. denied.* We will find an abuse of discretion and reverse only where the trial court's decision was clearly against the logic and effect of the facts and circumstances. *Id.*

Here, Peters' argument has two components: (1) the trial court violated Indiana Criminal Rule 4(C) and (2) the trial court violated Peters' constitutional rights under both the United States Constitution and the Indiana Constitution. We will address each of these issues separately.

I. *Indiana Criminal Rule 4(C)*

First, Peters claims that because his trial was not held until two years and eight months after the State charged him, he is entitled to discharge under Indiana Criminal Rule 4(C). Crim. R. 4(C) provides, in pertinent part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance

5

was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar. . . . Any defendant so held shall, on motion, be discharged.

This rule places the duty to bring a defendant to trial within one year on the State, and the defendant is under no obligation to remind either the State or the trial court of the State's duty. *Todisco v. State,* 965 N.E.2d 753 (Ind. Ct. App. 2012). Whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee is a determination that "largely depends on the specific circumstances of the case." *Gibson v. State,* 910 N.E.2d 263, 266 (Ind. Ct. App. 2009). If a defendant seeks or acquiesces in any delay which results in a later trial date, the time period is tolled and the time limitations of the rule are extended by the length of the delay. *Isaacs v. State,* 673 N.E.2d 757, 762 (Ind. 1996). A defendant also waives the right to trial within one year by failing to raise a timely objection if the trial court, acting during the one-year period, schedules the trial beyond the limit. *Pelley v. State,* 901 N.E.2d 494, 498-99 (Ind. 2009), *reh'g denied.*

On August 18, 2006, the State filed its Information against Peters, thereby commencing the one-year limitation for purposes of Crim. R. 4(C). *See Baumgartner v. State,* 891 N.E.2d 1131, 1134 (Ind. Ct. App. 2008). Both sides agree that the first six days following the charges were attributable to the State for purposes of the rule, thereby leaving a remaining limit of 359 days. However, on August 24, 2006, Judge Blanton recused himself due to a conflict, and Judge Lopp did not accept the appointment until August 29, 2006. As the unavailability of essential personnel constitutes a form of court

6

congestion that does not count against the rule period, those five days did not count against Peters' remaining 359-day limit. *See Loyd v. State,* 398 N.E.2d 1260, 1265 (Ind. 1980), *cert. denied*, 449 U.S. 881 (1980).

Thereafter, both parties agree that the 265-day period between August 29, 2006 and May 21, 2007 counted towards Crim. R. 4(C), leaving 94 days remaining. Then, on May 21, 2007, Peters moved for a continuance and the trial court reset the trial to September 11, 2007. The State claims that since a delay caused by a defendant's request for a motion for a continuance does not count against the rule, the period between May 21, 2007 and September 11, 2007 did not count against the remaining 94 days under the rule. *See* Crim. R. 4(C). However, on August 30, 2007, the trial court moved the trial date again due to court congestion. We therefore conclude that Peters is only responsible for tolling the period between May 21, 2007, and August 30, 2007, rather than the period between May 21, 2007 and September 11, 2007.

The primary issue in calculating Peters' remaining time is whether the trial court's two continuances following August 30, 2007 also tolled Peters' Crim. R. 4(C) limit. On August 30, 2007, the trial court reset the trial to February 12, 2008, and on February 1, 2008, the trial court again reset the trial for July 29, 2008. The State argues that these periods tolled the calculation of Peters' limit because the trial court's justification for both continuances was court congestion, which does not count against the State under Crim. R. 4(C). In response, Peters asserts that the trial court did not provide adequate evidence that its schedule was truly congested. If we accept Peters' argument, then more

7

than 365 days passed under the rule before the State tried Peters. If we accept the State's argument, then we must conclude that Peters waived his Crim. R.4(C) claim as the trial court's subsequent July 29, 2008 decision to reschedule the trial to December 16, 2008 fell outside of Peters' remaining 94 days, and Peters did not object. As we stated above, a defendant waives the right to a trial within one year under Crim. R. 4(C) by failing to raise a timely objection if the trial court, acting during the one-year period, schedules the trial beyond the limit. *See Pelley,* 901 N.E.2d at 498-99.

Our supreme court addressed a challenge to a trial court's finding of court congestion in *Clark v. State,* 659 N.E.2d 548 (Ind. 1995). In that case, Clark requested a speedy trial pursuant to Crim. R. 4(B), which requires the State to discharge a detained defendant who moves for an early trial if the State does not bring the defendant to trial within seventy days. *Id.* at 550. The trial court set Clark's trial to begin seventy days after his request for a speedy trial, but reset the trial date on the day of trial due to court congestion. *Id.* In response, Clark filed a motion for discharge under Crim. R. 4(B). *Id.* At a hearing on the motion, the bailiff in charge of juries for the county in which Clark was to be tried testified that no jury trial had been held on the day when Clark's trial had originally been scheduled, and that no jurors had been summoned to appear on that date. *Id.* In spite of this testimony, the trial court denied Clark's motion, noting its "routine practice of assigning several cases for jury trial on the same date, with noon the previous Friday as the 'cut-off' point at which the court assign[ed] the 'number one' case to be on the 'ready docket' and [continued] the other cases [] because of congestion.'" *Id.*

8

On appeal, our supreme court established the following standard for challenges to court congestion:

> Upon appellate review, a trial court's finding of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court. However, a defendant may challenge that finding, by filing a [m]otion for [d]ischarge and demonstrating that, at the time the trial court made its decision to postpone trial, the finding of congestion was factually or legally inaccurate. Such proof would be *prima facie* adequate for discharge, absent further trial court findings explaining the congestion and justifying the continuance. In the appellate review of such a case, the trial court's explanations will be accorded reasonable deference, and a defendant must establish his entitlement to relief by showing that the trial court was clearly erroneous.

*Id.* at 552. Based on this standard, the supreme court held that the trial court's declaration of congestion was clearly erroneous because Clark had provided evidence disputing the congestion finding, and neither the State nor the trial court had established that any trial was in fact conducted on the day when Clark's trial had originally been scheduled or otherwise explained the trial court's finding. *Id.*

While Peters only provided us with evidence of the trial court's 2008 calendar, rather than the 2007 calendar, he claims that the 2008 calendar is proof that the trial court's schedule was not congested during either of the periods in 2008 when the trial court continued his trial. Specifically, Peters points to the calendar as evidence that the first two weeks of Judge Lopp's schedule in February of 2008 were free, as well the period between February 12, 2008 and July 29, 2008.

We cannot agree with this contention because Peters has not provided us with any means of interpreting the 2008 calendar. As the State argues, the calendar seems to

9

demonstrate a great deal of congestion. Various case names are written throughout the period to which Peters refers and Peters has not established a context for those notations. We do not know whether they relate to jury trials or other court proceedings. In addition, it appears that the trial court was closed on February 12, 2008, the day of Peters' scheduled trial. In total, this evidence is very different from the evidence presented in *Clark.* In *Clark*, the bailiff specifically testified that no jury trials had occurred on the day in question. *Clark,* 659 N.E.2d at 550. Here, the evidence is not conclusive. As a result, we decline to find the trial court's declaration of congestion clearly erroneous. Further, we therefore conclude that Peters did not object when the trial court reset his trial outside of the 365-day limit imposed by Crim. R. 4(C), and thus waived his claim under Crim. R. 4(C). *See Pelley,* 901 N.E.2d at 498-99.

## II. *Constitutional Rights*

Next, Peter argues that the delay in the scheduling of his retrial following his mistrials violated his constitutional right to a speedy trial. While Crim. R. 4(C) operates to create a bright line rule defining a "reasonable time" for a defendant's initial trial, Indiana courts have made it clear that the time limitations of Crim. R. 4(C) do not apply on retrial. *Lahr v. State,* 615 N.E.2d 150, 151 (Ind. Ct. App. 1993). Instead, when a retrial is required, a defendant must rely on his constitutional right to a speedy trial under the United States Constitution or the Indiana Constitution. *Id.* The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees criminal defendants "the right to a speedy and public trial," and

10

the Indiana Constitution gaurantees that "justice shall be administered freely, and without purchase, completely and without denial; speedily and without delay." United States Constitution, Amend. VI; Indiana Constitution, art. I, § 12. In order to evaluate speedy trial claims under both the United States and Indiana Constitutions, Indiana courts have employed the balancing test established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182 (1993). *State v. Montgomery,* 901 N.E.2d 515, 520 (Ind. Ct. App. 2009), *adhered to on reh'g*, 907 N.E.2d 1057 (2009). The *Barker* balancing test involves an evaluation of both the State's and the defendant's conduct, taking into consideration such factors as: the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant. *Id.* None of these factors is either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Danks v. State,* 733 N.E.2d 474, 484 (Ind. Ct. App. 2000), *trans. denied.* Rather, they are related factors and must be considered together with such circumstances as may be relevant. *Id.*

Under *Barker,* the length of delay is "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Montgomery,* 901 N.E.2d at 520 (quoting *Barker*, 407 U.S. at 530). The amount of time constituting a presumptively prejudicial delay depends upon the peculiar circumstances of the case. *Id.* "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531. Similarly, the delay that can be tolerated for retrial is considerably less than for an initial trial

11

because the issues and evidence have been fully explored. *Lahr,* 615 N.E.2d at 152. However, there is a general consensus that a delay of eight months or longer is presumptively prejudicial. *Id.* at n.3.

In the instant case, Peters' first trial began on May 5, 2009 and ended in mistrial on May 6, 2009, due to an insufficient number of jurors. His second trial began seven weeks later on June 23, 2009 and ended in mistrial the same day, again due to an insufficient number of jurors. The third retrial began on October 6, 2009, approximately three and a half months later, and four days of trial were held before the trial court declared another mistrial on October 14, 2009. Subsequently, although the trial court scheduled a retrial date of March 15, 2010, Judge Lopp recused himself on February 23, 2010. The following day, Judge Howell was appointed, but on March 15, 2010, the State objected to Judge Howell's appointment and the scheduled trial did not commence. It was not until November 4, 2010, when Judge Cloud entered an appearance as the replacement trial court judge, that the trial court finally scheduled the trial to begin August 1, 2011, more than eight months into the future and more than twenty months past the date of the third mistrial. While there are justifiable reasons for many portions of this delay, we agree with Peters that it was sufficient to trigger the *Barker* analysis. We will address each prong of the *Barker* test in turn.

The first prong is the reason for the delay. In weighing this factor, we assess whether the government or the defendant is more to blame. *Fisher v. State,* 933 N.E.2d 526, 531 (Ind. Ct. App. 2010). Our supreme court has clarified that

12

[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Montgomery*, 901 N.E.2d at 520.

Here, the time after Peters' first two mistrials was not substantial—seven weeks after the first mistrial and three and a half months after the second. After the third mistrial, the delay was more significant—twenty months, as stated previously. However, we conclude that there was a substantial justification for this delay and that any negligence on the part of the State was minimal. Judge Cloud explained during the June 23, 2011 hearing on Peters' motion to dismiss that the delay in his appointment was due to his concerns that he did not have jurisdiction to hear the case until Judge Howell issued the order of appointment pursuant to the supreme court's order. When Judge Howell failed to follow through on the matter in a timely manner, Judge Cloud contacted him and resolved the issue. Thus, we conclude that Judge Cloud acted diligently to assume his role as trial court judge and the delay was due to a valid reason, akin to a missing witness. *See Montgomery*, 901 N.E.2d at 520. Also, with respect to the eight-month delay between Judge Cloud's assumption of the case and Peters' scheduled retrial, Judge Cloud noted that the parties had told the trial court that it would take two weeks to try the case, and the eight-month delay was due to the difficulty of finding room for a two-week trial.

13

Next, we look to whether and how Peters asserted his right to a speedy trial. We have previously noted that a defendant's failure to promptly assert a speedy trial right may show that a defendant does not desire to have a speedy trial or is seeking a strategic advantage. *Davis v. State,* 819 N.E.2d 91, 97 (Ind. Ct. App. 2004), *trans. denied.* The parties dispute the date that Peters first raised the issue of his right to a speedy trial following his mistrial. Peters claims that he asserted it during the November 29, 2010 pre-trial conference, but he has not provided a transcript of that conference on appeal. Alternatively, he argues that he raised the issue in his renewed motion to dismiss on December 13, 2010, but the State counters that he only mentioned his claims under Crim. R. 4(C) in this motion. According to the State, Peters first raised the issue in the trial court's June 23, 2011 hearing on his motion to dismiss. Regardless of the exact date that Peters raised the issue, we note that there was a significant delay between his third mistrial and his mention of his right to a speedy trial because at a minimum, over a year had passed. Further, we find it significant that during this time period, Peters moved for a continuance because he wanted more time to prepare for trial. In light of these factors, we conclude that Peters' assertion of his constitutional rights does not weigh strongly in his favor.

Finally, we will examine whether Peters suffered prejudice due to the delay of his trial. Preliminarily, we note that Indiana courts have placed the burden of demonstrating actual prejudice on the defendant in questions of speedy trial deprivations. *Fisher,* 933 N.E.2d at 532. We have held that prejudice should be assessed in light of the interests of

14

defendants that the speedy trial right was designed to protect. *Lahr,* 615 N.E.2d at 153. The supreme court has identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* Of these, the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Id.* "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Id.*

Peters suggests that although he "has not permanently lost any defense witnesses over the course of five years since the date the [I]nformation was first filed, many witnesses may have relocated making it more difficult to corroborate their former testimony and others may be unable to recall events in detail due to the passage of time." (Appellant's Br. p. 12). He also argues that he has suffered significant prejudice outside of the courtroom because "[h]e has been stigmatized in the community and unable to hold steady employment since the allegations were first made in 2006. He has subsequently been forced to live with relatives as the financial burdens of criminal litigation have taken their toll." (Appellant's Br. p. 13).

With regard to Peters' first assertion, we note that Peters' reasoning is speculative at best. Peters cannot say that any of his witnesses *have* relocated, and he admits that he has not permanently lost any of his witnesses. Likewise, Peters has not provided us with

any evidence that the pending charges against him have prevented him from holding employment. We do recognize that it is possible Peters' charges have made it difficult for him to find employment, but we will not grant that factor significant weight absent evidence of actual prejudice. Instead, we find that the prejudice against Peters is minimal. Because Peters posted bond on September 13, 2006, he has been free from incarceration during the pendency of this case.

Balancing the four *Barker* factors, we conclude that the trial court did not violate Peters' constitutional right to a speedy trial. The reasons for the delay were justifiable and Peters did not insist on his right to a speedy trial at the first available opportunity. Instead, he moved for a continuance. Finally, the prejudice Peters has suffered is minimal as he has been free from incarceration since 2006 and has not permanently lost any witnesses. Thus, although some of the *Barker* factors weigh in his favor, their weight is not enough to approach a deprivation of Peters' constitutional rights. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Peters' motion to dismiss.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it denied Peters' motion to dismiss in which he alleged that the State had failed to bring him to trial in a timely manner

Affirmed.

NAJAM, J. and DARDEN, S. J. concur

16