## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2015, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Robert O. Beymer<br>Joelle A. Freiburger<br>Portland, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>J.T. Whitehead<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terrence Jamual Douglass,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | April 28, 2015<br><br>Court of Appeals Case No. 18A02-1410-CR-726<br><br>Appeal from the Delaware Circuit Court.<br>The Honorable Linda Ralu Wolf, Judge.<br>Cause No. 18C03-1210-MR-3 |

**Baker, Judge.**

[1] Terrance Jamual Douglass appeals his convictions for Armed Robbery,[1] a Class B felony, Criminal Confinement,[2] a Class B felony, and Possession of a Firearm by a Serious Violent Felon,[3] a Class B Felony. He argues that the trial court erred when it denied his motions to dismiss pursuant to Indiana Criminal Rule 4(B) and 4(C). Douglass also argues that his sentence was inappropriate in light of the nature of the offenses and his character. Finding no error, we affirm.

## Facts

[2] On October 22, 2012, Douglass and Freddie Darnell Perry spent time with Stacy Best. They drove Best's car to Ivan Coleman's neighborhood. Perry called Coleman and told him that he wanted to come to Coleman's house to purchase marijuana. Douglass and Perry walked to Coleman's house. At that point, Douglass gave Perry his gun, a .45-caliber handgun.

[3] Perry walked into Coleman's house while Douglass waited outside. Coleman went to get the marijuana, and when he returned to the front room, Perry pulled out the gun and pointed it at him. Perry then called Douglass and told him to come into the house. Douglass entered the house and Perry handed him the gun. They ordered Coleman to get on the ground, and they restrained him with zip-ties. Douglass then searched Coleman and took $700 from his pocket.

---

[1] Ind. Code § 35-42-5-1(1).

[2] I.C. §§ 35-42-3-3(a)(1), -3(b)(2)(A).

[3] Ind. Code § 37-47-4-5(c).

[4] At this point, Marcus Jackson arrived at Coleman's house. Douglass and Perry kept Jackson and Coleman at gunpoint while they searched the home. They took a .38-caliber gun, two pairs of shoes, and some marijuana. Perry and Douglass then forced Jackson and Coleman to leave the house and walk towards a vacant lot. However, Coleman's mother, Jackie Seals, drove by them in her car and recognized her son. Perry and Douglass ran away, and Seals followed them.

[5] While following Perry and Douglass, Seals passed Jamel Barnes, and she asked him if he had seen Perry and Douglass. Barnes pointed her in their direction. Seals drove onto Fifth Street, where she saw movement in the bushes. She yelled "you robbing people . . . stupid, get a job." Tr. p. 332. Douglass ran when he saw Seals's car on Fifth Street. Seals then continued driving, and, a short time later, she heard a gunshot. She drove back towards Fifth Street, where she saw Barnes lying on the ground and called 911.

[6] Douglass fled the neighborhood and made contact with his mother's boyfriend, Larry Price. Price and Douglass's mother, Tamara Douglass, drove Douglass to Price's home. From there, Shanta Vance drove Douglass to Anderson. Eventually, police saw Douglass in Vance's vehicle, pulled over the vehicle, and arrested Douglass.

[7] Perry was later arrested in Richmond. The State extended a plea offer to Perry in exchange for his cooperation and testimony at Douglass's trial. Perry

testified at Douglass's trial that Douglass had taken part in the commission of both armed robbery and confinement.

[8]     On October 31, 2012, the State charged Douglass with five counts: 1) murder, a felony; 2) murder, a felony; 3) armed robbery, a class B felony; 4) criminal confinement, a class B felony; and 5) unlawful possession of a firearm by a serious violent felon, a class B felony. On November 9, 2012, the trial court held an initial hearing, at which the Delaware County Public Defender was appointed to represent Douglass and the case was set for jury trial on April 1, 2013.

[9]     On November 28, 2012, Public Defender Douglas Mawhorr filed his appearance for Douglass, and on December 7, 2012, Public Defender Brandon Murphy filed his appearance for Douglass. On January 25, 2013, Mawhoor filed his motion to withdraw, which was granted on January 28, 2013. On January 29, 2013, Public Defender Steven Bruce filed his appearance for Douglass.

[10]    On January 31, 2013, the trial court held a pretrial conference, at which the parties agreed to continue the jury trial, and Douglass filed a motion to continue on February 2, 2013. The motion was granted and the jury trial was continued to August 12, 2013. On July 11, 2013, Douglass filed another motion to continue, which was granted, and the jury trial was continued to October 7, 2013. On September 6, 2013, at the pretrial conference, the State

asked for a continuance, which was granted. The jury trial was continued to January 13, 2014.

[11] The jury trial commenced on January 13, 2014. On January 14, 2014, the trial court declared a mistrial, and the jury trial was rescheduled to July 28, 2014. Bruce and Murphy both filed motions to withdraw as public defender, which were granted.

[12] On February 17, 2014, Douglass, pro se, filed a motion for a speedy trial, which was granted. The trial court set the jury trial for April 17, 2014. On February 4, 2014, Robert O. Beymer and Alan K. Wilson filed their appearances as public defenders on behalf of Douglass. On March 4, 2014, the trial court reset the jury trial for April 3, 2014.

[13] On March 12, 2014, the State filed a motion to disqualify public defender Wilson. On April 2, 2014, a hearing was held on the motion. However, public defender Wilson filed a motion to withdraw, which was granted on that date. Also on April 2, 2014, Joelle Freiberger filed her appearance as a special public defender on behalf of Douglass.

[14] On April 4, 2014, the State filed a motion to continue and consented to Douglass's release on the underlying charges in the instant case. The trial court granted the continuance and set August 14, 2014 as the new trial date. On April 8, 2014, Douglass, acting pro se, filed an objection to the change of trial date, which was struck pursuant to Indiana Trial Rule 11.

[15] On April 25, 2014, Douglass filed a motion for discharge pursuant to Indiana Criminal Rule 4. The trial court granted the motion. However, Douglass remained incarcerated because he was serving a sentence in another cause. On July 31, 2014, Douglass filed a motion to dismiss pursuant to Indiana Criminal Rule 4(B). The trial court denied the motion on August 4, 2014. On August 14, 2014, Douglass filed a motion to dismiss pursuant to Criminal Rule 4(C). On August 16, 2014, the trial court held a hearing on Douglass's motion to dismiss pursuant to Criminal Rule 4(C). The motion was denied.

[16] Douglass's jury trial began on August 18, 2014. On August 22, 2014, the jury found Douglass not guilty of murder, but guilty of armed robbery, criminal confinement, and possession of a firearm by a serious violent felon. The trial court sentenced Douglass to twenty years for armed robbery, twenty years for criminal confinement, and twenty years for possession of a firearm. The trial court ordered the sentences to be served consecutively, for an aggregate sentence of sixty years. Douglass now appeals.

## Discussion and Decision

[17] Douglass argues that the trial court erred when it denied his motions to dismiss pursuant to Indiana Criminal Rule 4(B) and 4(C). Douglass also argues that his sentence was inappropriate in light of the nature of the offenses and his character.

# I. Motion to Dismiss: Criminal Rule 4(B)

[18] Douglass first argues that the trial court erred in denying his motion pursuant to Indiana Criminal Rule 4(B). When reviewing a trial court's decision under Criminal Rule 4, this Court defers to disputed findings of fact, but reviews the trial court's legal conclusions de novo. *Wood v. State*, 999 N.E.2d 1054, 1060 (Ind. Ct. App. 2013). The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee the right to a speedy trial. *Blair v. State*, 877 N.E.2d 1225, 1230 (Ind. Ct. App. 2007). Regarding the date by which a trial must be held, Criminal Rule 4(B) provides in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Criminal Rule 4 places an affirmative duty on the State to bring the defendant to trial. *Cundiff v. State*, 967 N.E.2d 1026, 1028 (Ind. 2012). However, the purpose of Rule 4 is not to provide defendants with a technical means to avoid trial. *Id*.

[19] Here, Douglass filed his speedy trial motion on February 17, 2014. His jury trial did not take place until August 18, 2014. Appellant's App. p. 50. Douglass argues that he was incarcerated for a total of ninety-nine days after his request for a speedy trial, exceeding the seventy days allotted by Criminal Rule

4(B).  However, we note that, on April 25, 2014, the trial court issued an order that Douglass be discharged from custody in the cause underlying the instant case.  *Id.* at 53-54.  Douglass remained incarcerated only because he was serving a sentence in another cause.

[20]  In *Cundiff v. State*, our Supreme Court held that Criminal Rule 4(B) is only available to a defendant when he seeks a speedy trial on charges for which he is incarcerated.  697 N.E.2d at 1031.  When the trial court discharged Douglass on April 25, 2014, Douglass was no longer incarcerated on the charges underlying the instant case.  It is of no matter that Douglass was incarcerated because he was serving a sentence in another cause number.  Douglass was released on the charges underlying this case on April 25, 2014, which is within seventy days of February 17, 2014.  Therefore, the trial court did not err when it denied Douglass's motion to dismiss pursuant to Criminal Rule 4(B).

## II. Motion to Dismiss: Criminal Rule 4(C)

[21]  Douglass also argues that the trial court erred in denying his motion to dismiss pursuant to Criminal Rule 4(C).  As noted above, when reviewing a trial court's decision under Criminal Rule 4, this Court gives deference to disputed finding of fact, but reviews the trial court's legal conclusions de novo.  *Wood*, 999 N.E.2d at 1060.  Indiana Criminal Rule 4(C) provides in relevant part:

> No person shall be held on recognizance or otherwise to answer a
> criminal charge for a period in aggregate embracing more than one
> year from the date the criminal charge against such defendant is filed,
> or from the date of his arrest on such charge, whichever is later; except
> where a continuance was had on his motion, or the delay was caused

by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar . . . .

The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons. *Cook v. State*, 810 N.E2d 1064, 1065 (Ind. 2004).

[22] Douglass's reliance on Rule 4(C) is misplaced. His first trial, which took place within a year of his arrest, resulted in a mistrial. Our Supreme Court has held that the time limitations of Indiana Criminal Rule 4(C) do not apply on retrial. *State v. Montgomery*, 901 N.E.2d 515, 519 (Ind. Ct. App. 2009). Therefore, the trial court did not err in denying his motion to dismiss pursuant to Rule 4(C).[4]

## III. Sentencing Challenge

[23] Finally, Douglass argues that his sentence was inappropriate in light of the nature of the offenses and his character.[5] On appeal, this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature

---

[4] Where retrial is required, a defendant must rely on his constitutional speedy trial right, which requires that a defendant be tried within a reasonable time. *Montgomery*, 901 N.E.2d at 519. However, Douglass has made no argument in this regard, and has therefore waived any such argument. Waiver notwithstanding, Douglass did not show that the delay was unreasonable or that it prejudiced him.

[5] Douglass also implies in his brief that the trial court may have ordered his sentences to be served consecutively because the trial court agreed with the deputy prosecutor that Douglass should have been found guilty of Barnes's murder. Appellant's Br. p. 14. There is nothing in the record to suggest this. We remind counsel for Douglass that Indiana Rule of Professional Conduct 8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." We caution counsel to heed this rule in the future.

of the offense and the character of the offender." Ind. Appellate Rule 7(B). However, this Court does not substitute its judgment for that of the trial court. *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind. Ct. App. 2003). Under Appellate Rule 7(B), the question is not whether it is more appropriate to impose a different sentence upon the defendant, but whether the defendant's sentence is inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). On appeal, the defendant bears the burden of persuading this Court that the sentence he received is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[24] Regarding the nature of the offenses, Douglass went into Coleman's home under false pretenses and pointed a gun at him. He restrained Coleman with zip ties and forced Coleman and Jackson to walk towards a vacant lot. Coleman feared for his life and, on the walk to the lot, believed that Douglass was going to kill him. Douglass did not allow Coleman and Jackson to go free. Rather, he only released them when he was forced to run away because he saw Coleman's mother driving behind them. We do not find that Douglass's sentence is inappropriate in light of the nature of the offenses.

[25] In considering Douglass's character, we note that Douglass has been charged with and convicted of eight felonies. His juvenile and adult criminal history is extensive. In addition, he has admitted to using a plethora of illegal substances, some of which have led to convictions. We also note that, in the instant case, Douglass fled the neighborhood after committing his crimes and enlisted the help of family and friends to escape, implicating them in his criminal acts.

Under the circumstances, we do not find that Douglass's sentence is inappropriate in light of his character.

[26] The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.